**AMERICAN PRINTING HOUSE FOR THE BLIND, as Insured by MUTUAL INSURANCE CORPORATION OF AMERICA, Appellant,**

v.

**Janet BROWN; American Printing House for the Blind, as Insured by Kesa; Hon. J. Kevin King, Administrative Law Judge and Workers' Compensation Board Appellees**

No. 2003–SC–0837–WC.

Supreme Court of Kentucky.

Aug. 26, 2004.

As Corrected Aug. 27, 2004.

James G. Fogle, Jane Ann Pancake, Ferreri & Fogle, Louisville, Counsel for Appellant, American Printing House for the Blind, as Insured by Mutual Ins. Corp. of America.

Peter J. Naake, Louisville, Counsel for Appellee.

Mark Edward Hammond, O'Bryan, Brown & Toner, Louisville, for Counsel for Appellee, American Printing House for the Blind, as Insured by KESA.

## OPINION OF THE COURT

An Administrative Law Judge (ALJ) determined that the claimant's gradual injury and disability became manifest on June 5, 2000, at which time Mutual Insurance Company of America (MICOA) covered the employer's workers' compensation liability. Appealing, MICOA asserted that the injury did not become manifest until January 11, 2001, when a physician informed the claimant of her work-related gradual injury and when KESA provided coverage. Distinguishing authority concerning the notice requirement and the applicable period of limitations, the Workers' Compensation Board and the Court of Appeals have affirmed. Likewise, we affirm.

The claimant had a long history of performing repetitive work with her arms and hands. In 1987, she developed tendonitis while working on an assembly line. The condition resolved after she was placed on light duty and prescribed anti-inflammatory medication as well as physical therapy. She began working for the defendant-employer in 1990, again performing repetitive work with her arms and hands. Although she experienced temporary soreness when moved to new work stations, the soreness always resolved after a day or so.

The claimant testified that on June 5, 2000, she began to experience pain in her wrists and immediately informed the employer's safety coordinator that she thought her symptoms were caused by her repetitive work. She began using wrist bands in an attempt to alleviate the pain, but her condition deteriorated. On June 28, 2000, she informed the safety coordinator of pain in her shoulders, hands, forearms, and elbows and indicated that she thought it was caused by her work. On November 4, 2000, she notified the coordinator that her family physician had informed her she was suffering from carpal tunnel syndrome and advised her to wear gloves at work. The safety coordinator provided a pair of gloves. On January 4, 2001, the claimant requested a second pair to wear at home and indicated that she was experiencing pain in her forearms. On January 8, 2001, the safety coordinator advised her to file a workers' compensation claim.

Ms. Cheatham, the safety coordinator and company nurse, testified that she kept a log of all employee visits. It indicated that the claimant complained of pain in her arms and shoulders on June 28, 2000. In November, 2000, she had requested gloves, indicating that her physician had diagnosed carpal tunnel syndrome and advised her to wear gloves at work. On January 4, 2001, she requested a second pair to wear at home and stated that she no longer had forearm pain. Ms. Cheatham stated that on January 8, 2001, she advised the claimant to prepare a workers' compensation claim form.

The claimant sought treatment from Dr. Roberts on January 11, 2001. His notes indicated that she gave a history of being diagnosed with carpal tunnel syndrome 15 years earlier and a history of hand, wrist, arm, and shoulder pain for the past seven months. Dr. Roberts diagnosed bilateral carpal tunnel syndrome, worse on the right side, and bilateral epicondylitis. He recommended an icing program, EMG/NSC studies of both arms, bilateral wrist braces, and Vioxx. He informed her that he thought the conditions were work-related and restricted her to light duty work without repetitive wrist motions. The EMG revealed mild right median nerve mononeuropathy across the wrist, and an MRI showed effusion and evidence of bursitis. Dr. Roberts later diagnosed right shoulder impingement syndrome and AC joint arthritis. In subsequent reports, Dr. Roberts stated that the carpal tunnel syndrome was related to the claimant's present job rather than to her work 15 years ago, explaining that the previous condition had completely resolved with bracing. Dr. Roberts assigned a 12% impairment.

On June 20, 2001, the claimant filed an application in which she alleged a repetitive motion injury to her wrists, elbows, and right shoulder. The application listed June 5, 2000, as the date of injury and indicated that she gave notice on that date. There was evidence that the claimant missed work and received short-term disability benefits due to her condition from March 19, 2001, through September 10, 2001. On September 11, 2001, she returned to work with lifting restrictions. Shortly thereafter, she bid for and obtained lighter work, which was still repetitive but produced fewer symptoms. She continued working in that capacity when her claim was heard.

The parties stipulated that MICOA was responsible for an injury that occurred before October 1, 2000, and that KESA was responsible for an injury that occurred thereafter. Relying on the claimant's testimony as well as the decisions in *Alcan Foil Products v. Huff*, Ky., 2 S.W.3d 96 (1999), and *Special Fund v. Clark*, Ky., 998 S.W.2d 487 (1999), the ALJ noted that the

claimant's symptoms led her to discover her work-related injury on June 5, 2000. For that reason, the ALJ determined that the injury occurred and the disability became manifest on June 5, 2000, making MICOA liable. The claimant received temporary total disability (TTD) benefits from March 19 through September 10, 2001, followed by an award of partial disability that was based upon a 12% impairment and reduced by 1/2 under KRS 342.730(1)(c)2 because the claimant returned to work at the same or greater wage.

■ MICOA appealed, asserting that the June 5, 2000, injury date was erroneous as a matter of law. Its argument was that although the claimant may have suspected that the symptoms she experienced on June 5, 2000, were due to a work-related injury, she was not a medical expert; therefore, it could not be said that she knew her condition was work-related until Dr. Roberts informed her of his diagnosis on January, 11, 2001. *Hill v. Sextet Mining Corp.*, Ky., 65 S.W.3d 503 (2001). MICOA asserted that the same date that triggers the notice and limitations requirements should apply when determining which carrier is responsible for the claim. If that date is when a worker knows or should have known that she sustained a work-related injury, then notice and limitations should also run from that date rather than the date a physician informs the worker that her condition is due to a work-related gradual injury.

Under the version of KRS 342.0011(1) that pertains to this claim, an injury is a work-related traumatic event that causes a harmful change in the human organism. KRS 342.185 provides a period of limitations for a work-related injury that runs for two years after the date of the accident that causes it. In *Alcan Foil Products v. Huff, supra* at 99 and 101, we noted that

"the entitlement to workers' compensation benefits stems from the fact that an occupational injury has been sustained" and that it "begins when a work-related injury is sustained, regardless of whether it is occupationally disabling." Nonetheless, because gradual injuries often occur imperceptibly, we reaffirmed the principle that a rule of discovery governs the notice and limitations requirements for such injuries. We determined that the obligation to give notice and the period of limitations for a gradual injury are triggered by a worker's knowledge of the harmful change and its cause rather than by the specific incidents of trauma that caused it. Nothing in *Alcan* indicated that liability for an injury begins when the notice and limitations requirements are triggered.

In *Alcan*, the workers knew of their hearing loss and knew it was work-related more than two years before they filed their claims. Although they continued to work and to be exposed to harmful noise thereafter, there was no evidence that part of their disability was attributable to trauma incurred within two years before their claims were filed. We concluded, therefore, that the claims were entirely barred by limitations. The principles that *Alcan* addressed were refined in a number of subsequent cases, including *Hill v. Sextet Mining Corp., supra*, in which we determined that a worker is not required to self-diagnose the cause of a harmful change as being a work-related gradual injury for the purpose of giving notice.

■ It is undisputed that the claimant sustained work-related trauma and that harmful changes from the trauma were symptomatic on June 5, 2000. Therefore, she sustained an injury as defined by KRS 342.0011(1) although Chapter 342's notice and limitations provisions were not triggered until she received a medical diagnosis in January, 2001. *See Hill v. Sextet*

*Mining Corp., supra.* As the Court of Appeals noted, nothing prohibits a worker who thinks she has sustained a work-related gradual injury from reporting it to her employer before the law requires her to do so, and nothing prevents her from reporting an injury that she thinks is work-related before a physician confirms her suspicion. Once informed that a work-related injury is alleged, an employer has certain obligations under KRS 342.038 and KRS 342.040. Likewise, notice of an allegation that a compensable injury occurred on a particular date gives rise to certain contractual obligations on the part of the carrier who covered the employer's liability on that date. If the allegation is contested, it is the worker's burden to pursue and prove a claim.

Having considered MICOA's argument, we are not persuaded that the finding concerning the date of injury resulted from an erroneous interpretation of the law. Furthermore, the ALJ determined that the claimant's work caused her to sustain a disabling injury that became manifest on June 5, 2000, and there was substantial evidence in the record to support such a finding. Therefore, the Board and the Court of Appeals did not err in refusing to disturb it.

The decision of the Court of Appeals is affirmed.

All concur.