**Joann BRUMMITT, Appellant,**

v.

**SOUTHEASTERN KENTUCKY REHABILITATION INDUSTRIES; Hon. Bonnie Kittinger, Administrative Law Judge; and Workers' Compensation Board, Appellees.**

No. 2003–SC–1028–WC.

Supreme Court of Kentucky.

Feb. 17, 2005.

---

**2.** KRS 504.100.

**3.** KRS 532.050(3).

John E. Anderson, Cole, Cole, Anderson & Nagle, PSC, Barbourville, Counsel for Appellant.

Ronald J. Pohl, Picklesimer, Pohl & Kiser, P.S.C., Lexington, Counsel for Appellee.

## OPINION OF THE COURT

The defendant-employer covered its workers' compensation liability with different carriers in April and October, 2000. The claimant settled her claim for a gradual injury with the first carrier but fully litigated it against the second. Based on a finding that a gradual injury became manifest on April 17, 2000, an Administrative Law Judge (ALJ) dismissed the claim for an October, 2000, injury and determined that the carrier on risk in April, 2000, bore all liability. The Workers' Compensation Board (Board) and the Court of Appeals affirmed. We have concluded, however, that the ALJ misapplied KRS 342.0011(1) and erred by determining that an April manifestation date necessarily made the carrier on risk at that time responsible for the employer's entire liability. As a result, the ALJ failed to consider whether work-related trauma that occurred after April, 2000, caused a harmful change for which the subsequent carrier was responsible. For that reason, we reverse and remand for further consideration.

The claimant was employed by the defendant-employer from October 11, 1999, through December 11, 2000. She testified that her work on the assembly line required her to perform various tasks that involved the repetitive use of her hands. In April, 2000, she began to experience pain in her wrists as well as in her neck and shoulders. After discussing her symptoms with her co-workers, she purchased and began wearing wrist braces as some of them did.

On April 17, 2000, while at the White House Clinic with a sick child, the claimant complained of swelling and numbness in her hands to Ms. Fee, a nurse practitioner. Ms. Fee noted that the claimant performed a "repetitive motion job" and that she suffered from "probable repetitive motion syndrome of both extremities." She prescribed Celebrex and provided the claimant with new wrist supports, directing her to wear them at night and as much of the day as possible. She did not restrict the claimant's work activities. When asked subsequently if Ms. Fee had told her that her symptoms were work-related, the claimant stated that she did and that they were due to "overworking my hands." She also stated that she informed her supervisor when she returned to work.

On October 6, 2000, the claimant returned to the White House Clinic for treat-

ment of her hand pain. At that time, Dr. Adkins noted that the claimant worked on an assembly line and did repetitive work. He diagnosed probable carpal tunnel syndrome, discussed treatment options, and recommended the use of wrist splints. The claimant returned on October 10, 2000, stating that her pain was worse and that she was unable to work. Dr. Adkins restricted her from performing activities that would aggravate the condition and scheduled nerve conduction studies. When she returned on October 12, 2000, stating that severe pain prevented her from doing anything with her hands, Dr. Adkins took her off work for several days and suggested that she attempt to find other employment. An EMG was performed on November 1, 2000, and revealed bilateral median mononeuropathy. Dr. Adkins released the claimant to limited work on the following day, but her symptoms continued, causing her to miss work sporadically until December 11, 2000, when she quit altogether.

On March 28, 2002, the claimant filed an application for benefits, alleging an injury date of April 17, 2000. Ms. Fee's notes as well as the results of the EMG and nerve conduction studies were attached to the application. On June 21, 2002, the claimant moved to amend her application to allege an alternative injury date of October 6, 2000, when Dr. Adkins diagnosed bilateral carpal tunnel syndrome. It was later shown that Kentucky Employers' Mutual Insurance (KEMI) provided workers' compensation coverage for the employer from April 17, 2000, until May 1, 2000. Century Insurance provided coverage in October, 2000. Century did not object to the motion to amend but asserted that the proper date of injury was April 17, 2000.

On or about September 24, 2002, after the hearing but before the matter was submitted to the ALJ for a decision, the claimant reached a settlement with her employer, as insured by KEMI, and the parties submitted the agreement to the ALJ for approval. The claimant agreed to release the employer from any liability that it might have for an injury that became manifest on April 17, 2000, in exchange for a lump sum of $5,000.00. She reserved her right to pursue the claim for an injury of October 6, 2000, against the employer, as insured by Century.

When the claim for an October 6, 2000, injury came before the ALJ, the contested issues included: date of injury/pre-existing active disability, extent and duration, entitlement to temporary total disability, unpaid medical expenses, and the carrier responsible for medical expenses. Notice and limitations were not at issue. Nonetheless, the ALJ stated that there was a threshold issue concerning the date on which the injury became manifest. The ALJ acknowledged that although Dr. Adkins did not diagnose carpal tunnel syndrome until October 6, 2000, Ms. Fee informed the claimant that she suffered from "repetitive motion syndrome" and advised her that it was caused by her work. The ALJ stated that this was "not a case in which the claimant's symptoms improved and a 'new injury' later became manifest at a later date" or a case in which company medical personnel misled her about the cause of her symptoms. Concluding that the injury became manifest on April 17, 2000, the ALJ determined that it occurred during KEMI's coverage period and that Century bore no liability. After rendering the decision, the ALJ approved the agreement between the claimant and KEMI.

Having failed to convince the Board or the Court of Appeals that the decision was erroneous, the claimant continues to maintain she could not have known that she sustained an injury until October, 2000, since Ms. Fee made no definitive diagnosis

and imposed no specific restrictions. She asserts that because carpal tunnel syndrome is the harmful change that she has alleged and because the condition was not diagnosed until October, 2000, the injury did not become manifest until then. She also argues that the ALJ failed to consider the difference between knowledge that a condition is symptomatic at work and knowledge that it is caused by work. Finally, she asserts that the manifestation of injury in a cumulative trauma case is not analogous to an injury due to a single event. Although we are convinced that there was substantial evidence the claimant's injury became manifest in April, 2000, we agree that the ALJ erred by treating this claim as being analogous to one for a single traumatic event.

■ A gradual injury generally arises imperceptibly, from the physical strain of numerous instances of minor workplace trauma, also referred to as minitrauma. For that reason, the courts have applied a rule of discovery for establishing the date of injury. Hence, a gradual injury becomes manifest for the purpose of notice and limitations with the worker's knowledge of the harmful change and the fact that it is caused by the work. *Special Fund v. Clark*, Ky., 998 S.W.2d 487 (1999); *Alcan Foil Products v. Huff*, Ky., 2 S.W.3d 96 (1999). Whether a healthcare provider has given the harmful change a general or specific name is immaterial.

KRS 342.0011(1) defines an injury as being a work-related traumatic event that causes a harmful change in the human organism. The ALJ erred by treating this claim as being analogous to one for a single traumatic event and by relying on the fact that the claimant's symptoms did not improve as a basis for determining that there was no new injury. Where an individual continues to perform the same repetitive activity after a gradual injury

becomes manifest, additional incidents of workplace trauma may well cause additional harmful changes. In other words, the individual may well sustain subsequent gradual injuries. We acknowledged as much in *Special Fund v. Clark, supra,* although the question there was one of limitations.

■ Notice and limitations were not at issue in this case, and the claimant settled regarding the employer's liability for a gradual injury of April, 2000. Discussion at the hearing indicated that Century provided coverage beginning in May or June, 2000. The claimant continued to perform the same work between April and October, 2000, and the claim before the ALJ concerned the employer's liability for a gradual injury of October, 2000, when Century provided coverage. Therefore, the ALJ erred by determining that an April manifestation date necessarily made KEMI responsible for the employer's entire liability and necessarily precluded an award for the effects of trauma incurred during the period for which Century was responsible. KRS 342.0011(1) required the ALJ to consider the medical evidence and to determine whether workplace trauma that occurred after April, 2000, caused a harmful change. If it did, the claimant sustained an injury for which Century was responsible.

The decision of the Court of Appeals is reversed, and this matter is remanded to an ALJ for further consideration.

LAMBERT, C.J., and JOHNSTONE, KELLER, SCOTT and WINTERSHEIMER, J.J., concur.

COOPER, J., dissents by separate opinion in which GRAVES, J., joins.

COOPER, Justice, dissenting.

The majority opinion has *sua sponte* created a new rule for "gradual injury"

cases that inexplicably departs from the sound principles established in cases such as *American Printing House for the Blind v. Brown,* 142 S.W.3d 145 (Ky.2004), which was so recently decided that there were ink stains on my hands after reviewing it. Because this new rule undoubtedly will discourage voluntary payments and settlements of such cases and encourage insurers to avoid liability by canceling coverage, thereby encouraging employers to terminate partially disabled workers, I respectfully dissent.

The issue in this case, as it was in *American Printing House,* is which of two successive insurers of the same employer provided coverage for a work-related gradual injury, *i.e.,* on what date did the injury legally occur? In *Randall Co. v. Pendland,* 770 S.W.2d 687 (Ky.App.1989), the Court of Appeals adopted a rule of discovery and held that the date of injury is "when the disabling reality of the injuries becomes manifest," *id.* at 688, *i.e.,* when the worker experiences disabling symptoms of pain. In *Alcan Foil Products v. Huff,* 2 S.W.3d 96 (Ky.1999), we refined that rule by holding that the compensable injury manifests itself "where a worker discovers that a physically disabling injury has been sustained [and] knows it is caused by work," regardless of whether the worker thereafter continues to work in the same employment. *Id.* at 101.

In *American Printing House,* the employer's workers' compensation insurer for the period prior to October 1, 2000, was Mutual Insurance Company of America (MICOA); its insurer on and after that date was KESA. The worker began to experience pain in her wrists on June 5, 2000, and immediately gave notice to her employer that she had sustained a work-related injury. On June 28, 2000, she complained to the company nurse of arm and shoulder pain. In November 2000,

she informed her employer that her physician had diagnosed her condition as carpal tunnel syndrome. She continued to work until January 8, 2001. On January 11, 2001, she saw Dr. Roberts (not further identified), who diagnosed carpal tunnel syndrome and concluded that the condition was work-related. We held that June 5, 2000, was the date of the injury for coverage purposes, not November 2000 or January 11, 2001, even though the worker was not diagnosed with carpal tunnel syndrome and was not advised by a medical expert that the condition was work-related until after the coverage changed on October 1, 2000:

> It is undisputed that the claimant sustained work-related trauma and that harmful changes from the trauma were symptomatic on June 5, 2000. Therefore, she sustained an injury as defined by KRS 342.0011(1) although Chapter 342's notice and limitations provisions were not triggered until she received a medical diagnosis in January, 2001.

*Id.* at 148. Thus, MICOA was the responsible insurer (and, incidentally, the employee received seven additional months of benefits). *See also Special Fund v. Clark,* 998 S.W.2d 487, 490 (Ky.1999) (holding that the "date of accident," for statute of limitations purposes, in a gradual injury claim is the date the worker becomes aware of the existence of a disabling condition and the fact that it is caused by work).

In the case *sub judice,* the facts are virtually identical as those in *American Printing House* (even the dates roughly correspond). Kentucky Employers Mutual Insurance Co. (KEMI) was the workers' compensation insurer for Southeastern Kentucky Rehabilitation Industries until it canceled its coverage effective May 1, 2000. Century Insurance Co. was Southeastern's insurer after that date. Southeastern employed Appellant as an assem-

bly line worker from October 11, 1999 through December 11, 2000. The work required repetitive use of her arms and hands. In early April 2000, Appellant developed symptoms of what she believed to be tendonitis and purchased two arm braces at Wal–Mart, later explaining that she did so "[b]ecause other girls at work was, you know, wearing them and they told me that it helped a lot." On April 17, 2000, Appellant sought treatment at White House Clinic in McKee, Kentucky, because:

> I had went to work and my hands was hurting. And I asked her if there was something that she could give me or give me advice on my hands.

She was seen and treated by Jean L. Fee, a nurse practitioner, whose handwritten note in the clinic's medical records reflects "problems with hands, swelling, fingers numb." Fee diagnosed "[p]robable repetitive motion syndrome of both upper extremities" and gave Appellant a new pair of wrist splints and some pain medication. Appellant testified that Fee told her on that date that her condition was work-related and that she should wear the splints when working and rest her hands as much as possible. Appellant notified Gretta Lawson, her personnel supervisor, of Fee's advice and Lawson reassigned Appellant to a different assembly-line job.

On October 6, 2000, Appellant returned to White House Clinic and presented the same symptoms to Dr. Daniel Adkins, who diagnosed "probably early carpal tunnel syndrome" and tendonitis. Dr. Adkins prescribed a Colles' splint and pain medication. Appellant returned on October 10, 2000, and told Dr. Adkins that she was unable to work and that she "wants to file a workman's comp claim." Dr. Adkins' record for that date contains the following handwritten note: "has forms she wants filled out *states DOI 4/17/00.*" (Emphasis

added.) Dr. Adkins referred her to Dr. Paul Brooks for electromyography (EMG) testing. Dr. Brooks's report, dated November 1, 2000, reflects a "conclusion" of "Electrodiagnostic evidence of bilateral mild median mononeuropathies at the wrist." Appellant continued to work sporadically until December 11, 2000, when she finally quit. Thus, the facts of this case are virtually identical to those in *American Printing House.*

On her Application for Resolution of Injury Claim, Appellant stated that the date of her injury was April 17, 2000 (the date she learned that her disabling condition was work-related). She later amended her application to allege an alternate date of injury of October 6, 2000, the date Dr. Adkins diagnosed her disabling condition as "probably carpal tunnel syndrome" and tendonitis. The Administrative Law Judge (ALJ) made a finding of fact that Appellant became aware of both her disabling condition and that it was caused by her work on April 17, 2000, and the ALJ concluded from that finding that the date of injury and the relevant date for determining which insurer provided coverage for the claim was April 17, 2000. The ALJ also found that "[t]his is not a case in which the worker's symptoms improved, and a 'new injury' became manifest at a later date." *Brummitt v. Southeastern Ky. Rehab. Indus., Inc.,* No. 00–66642, slip op. at 8 (Ky. Dep't of Workers' Claims Oct. 28, 2002). In other words, there was only one injury, not two separate injuries occurring on both April 17, 2000, and October 6, 2000. Appellant has never contested that finding and does not claim on appeal that she sustained more than one injury. That theory is promulgated for the first time in today's majority opinion.

The Workers' Compensation Board unanimously affirmed, noting that the ALJ's findings of fact were supported by

"substantial evidence" and that her conclusions were "not wholly unreasonable as a matter of law."

> As aptly pointed out by the ALJ, this claim involves neither notice or [sic] statute of limitations; however, both Brummitt and South Eastern [sic] concede the respective rights and obligations of the parties become fixed on the date of manifestation of disability. This manifestation of disability date is a fact intensive determination by the fact finder based upon the particular circumstances in each case.... [A]n ALJ is authorized to conclude, if supported by evidence of record, that a disability could manifest on the date the claimant seeks treatment and is informed on that occasion that her condition is related to her work.

*Brummitt v. Southeastern Ky. Rehab. Indus., Inc.*, No. 00–66642, slip op. at 4–5 (Ky. Workers' Comp. Bd. Apr. 23, 2003).

The Court of Appeals also unanimously affirmed, noting that the standard of review is "to correct the Board only where it has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause injustice." *Brummitt v. Southeastern Ky. Rehab. Indus., Inc.*, No. 2003–CA–001055, slip op. at 6–7, 2003 WL 22417228 (Ky.App. Oct. 24, 2003) (citing *W. Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687–88 (Ky.1992)). Both the Board and the Court of Appeals noted that our cases do not require that the worker be aware of the precise diagnosis of the disabling condition, so long as the worker is aware of the existence of the condition and the fact that it is work related. That principle was most recently reiterated in *American Printing House*, 142 S.W.3d at 148–49, in which we held that the date of injury was June 5, 2000, when the worker gave her employer notice of her work-related gradu-

al injury, even though the medical diagnosis of work-related carpal tunnel syndrome was not made until January 11, 2001. Thus, the date of injury in this case does not turn on whether the swelling of Appellant's hands and the numbness in her fingers were caused by tendonitis (Appellant), repetitive motion syndrome (Jean Fee), carpal tunnel syndrome and tendonitis (Dr. Adkins), or bilateral mild median mononeuropathies (Dr. Brooks). Appellant admitted that she was aware of the swelling and numbness prior to April 17, 2000, and that she learned on that date that the swelling and numbness were caused by her work. She gave notice to her employer on that same date.

The ALJ's finding that a new injury did not occur on October 6, 2000, is also supported by substantial evidence and, thus, is binding on appeal. KRS 342.285(1). The White House Clinic records for October 6, 2000, reflect that Appellant "had the same symptoms six months ago." Nor did Appellant testify that her symptoms were different on October 6, 2000. But even if she had, "[o]nce a worker is aware of the existence of a disabling condition and the fact that it is caused by work, the worker would also be aware that continuing to perform the same or similar duties was likely to cause additional injury." *Special Fund v. Clark*, 998 S.W.2d at 490. Appellant has never claimed that she sustained more than one gradual injury. She only claims that the injury did not manifest itself until it was specifically diagnosed as carpal tunnel syndrome on October 6, 2000, the very same argument that we rejected in *American Printing House*.

The majority opinion's *sua sponte* holding that a gradual injury claim can be divided into a series of mini-injury claims to be separately litigated against an employer's subsequent insurers is simply unworkable. Insurers like KEMI will at-

tempt to reduce their own liability by proving that the worker's gradual injury worsened during a subsequent period when the employer was covered by a different insurer. That is especially true here, where KEMI cancelled its coverage only fourteen days after Appellant's manifestation of injury but Appellant continued to work for more than seven months thereafter. Based upon today's holding, we should have held in *American Printing House* that MICOA, the insurer providing coverage on June 5, 2000, was liable only for benefits that accrued prior to October 1, 2000, and that KESA, the subsequent insurer, was liable for benefits accruing thereafter. It is no answer to say that the issue was not raised in *American Printing House*—for neither was it raised here.

Today's holding will also encourage insurers to cut their losses by canceling coverage for employers who retain gradually injured workers with only partial disabilities on their employment rolls, and it will discourage potential subsequent insurers from accepting coverage and, thus, assuming liability for payments to previously injured workers. This, in turn, could encourage employers to terminate gradually injured workers, who otherwise might remain gainfully employed, in order to obtain new coverage at a reasonable premium. This holding will also inhibit voluntary payments and settlements of gradual injury claims if an otherwise liable insurer believes it can reduce or avoid future payments by canceling coverage. Would KEMI have settled with Appellant if it had known that its liability for benefits expired fourteen days after the date of injury? I hope we have not made this unfortunate change in the law solely because Appellant did, in fact, settle her claim against KEMI and, thus, could recover additional benefits only against Century. However, I am aware of no fact, other than the claimant's settlement with the otherwise responsible insurer, that distinguishes this case from *American Printing House*.

Accordingly, I dissent.

GRAVES, J., joins this dissenting opinion.