RENDERED: JANUARY 21, 2021
TO BE PUBLISHED

# Supreme Court of Kentucky

2019-SC-0357-WC

FORD MOTOR COMPANY                                                    APPELLANT


ON APPEAL FROM COURT OF APPEALS
v.                          NO. 2018-CA-1871
WORKERS' COMPENSATION BOARD NO. 13-WC-90836


DEBORAH DUCKWORTH; JOHN H.                                           APPELLEES
MCCRACKEN, ADMINISTRATIVE LAW
JUDGE; AND WORKERS'
COMPENSATION BOARD


**OPINION OF THE COURT BY JUSTICE HUGHES**

**<u>AFFIRMING</u>**

Ford Motor Company appeals from the Court of Appeals' decision upholding an Administrative Law Judge's (ALJ) award of benefits to Deborah Duckworth. Ford argues that the ALJ exceeded the scope of his authority and erred in determining the manifestation dates of Duckworth's cumulative trauma neck and back injuries. Because the ALJ has authority to determine the manifestation date for cumulative trauma injury and properly applied controlling law to the facts of this case in determining that Duckworth's claim was not time-barred, we affirm the Court of Appeals.

**<u>FACTS AND PROCEDURAL HISTORY</u>**

Deborah Duckworth began working for Ford Motor Company in 1998 as an assembler at the Kentucky truck plant. She worked for ten hours a day,

five days each week.  Beginning in July 2007 she worked a wire loom job, which required her to pick the correct wire loom (harness) from the side of the line, tear the tape off, then carry the loom, weighing approximately 20 pounds, to the front of the frame of the vehicle to place the loom.  Duckworth testified that this caused her to have to stand on her toes, as the frames were higher than she could reach standing flat-footed.  She also stated that she had to constantly bend her neck "up and under" to see what she was hooking and that her back was constantly slouched.  She testified that she would repeat this action approximately 300 times per day.  Duckworth began having pain and spasms in her neck and back but, despite these symptoms, she continued her wire loom work.  Prior to the wire loom job, Duckworth had not experienced any pain nor required any treatment for her neck or back.

On November 8, 2007, Duckworth presented to the Ford medical facility with neck pain after leaning over a frame to put in the wire loom.  Again, she continued her wire loom work despite her symptoms.  She periodically visited the Ford medical facility and received conservative treatment, such as heat, ice and physical therapy, from Dr. Greg Ornella in 2008 and 2009.  In 2010 she experienced worsening lower back pain and again visited the Ford medical facility several times for treatment.  According to the medical records, during these intermittent visits none of the medical providers she treated with at the Ford medical facility informed her that her conditions were work-related.  In fact, her conditions were listed as an "illness."  Despite Duckworth informing the Ford medical providers that she believed her conditions were due to the

2

repetitive nature of her job, during some of her office visits she was told that Ford would not pay for her care. She was eventually referred to Dr. Rodney Chou who prescribed medication and referred her to Dr. Dean Collis for cervical and lumbar epidural injections. She received these injections in 2010 and 2011. She took time off work for the injections and on those days, Ford paid her temporary total disability (TTD) benefits.

Duckworth continued working the wire loom job until February 2011 when she was moved to a position that would cause less neck pain. However, a few weeks later she was returned to a different wire loom job. Duckworth testified that although the wire loom job was a "mandatory rotation job," meaning for half the day she would be rotated to a different position, the rotation was never enforced, and she worked the wire loom job for her entire shift. Her neck and back pain continued, and she treated at the Ford medical facility in 2011 to 2012. Duckworth testified that although the wire loom position was eventually eliminated, she struggled in every position in which they placed her. Eventually she lost control of her hands and her legs became weak. Prior to October 10, 2011, the Ford medical providers classified her condition as an "illness." During an October 10, 2011 visit to the Ford medical facility, a nurse noted that her low back condition was an "injury." The ALJ stated that it appeared this particular office note allowed Duckworth to get a lumbar epidural injection.

While working on April 12, 2012, Duckworth was struck on top of the head by a piece of handheld equipment. Her neck symptoms worsened

3

following this incident. Several months later, on October 2, 2012, she fell at work which worsened her neck symptoms.

During an evaluation Dr. Chou examined Duckworth's gait and tested her reflexes. He opined that something was wrong. On January 7, 2013 Duckworth obtained a cervical MRI and was referred to Dr. Thomas Becherer. Dr. Becherer placed her on restrictions beginning February 27, 2013. She underwent neck surgery on April 9, 2013. Duckworth continued to have weakness in her lower extremities and was referred to Dr. Richard Holt for further examination of her lumbar spine. Dr. Holt ordered an MRI and on November 29, 2013, performed back surgery.

Duckworth filed an Application for Benefits form on June 10, 2013. She stated she

> [s]uffered work-related cumulative trauma injury to her back and neck in the course of working the wireloom job which manifest 11/8/07. Plaintiff continued to work and perform the wireloom job and suffer cumulative trauma to her neck and back. Thereafter Plaintiff worked multiple jobs that caused hastened cumulative trauma to her neck and culminating with worsened MRI findings on 1/17/13 and the recommendation for cervical surgery February 2013.

Later in the claim she noted the body part injured as "back and neck (11/8/07; 1/7/13)." Ford filed a special answer, alleging that Duckworth's claims for injuries to her neck and back manifesting on November 8, 2007, were barred by the statute of limitations.

The ALJ held a Benefit Review Conference and the resulting order identified five injury dates, including November 8, 2007, but the order also stated that the injury dates were "at issue," and identified the "date of injury"

4

and "statute of limitations" as "contested issues." In her brief before the ALJ, Duckworth represented that she had "suffered work-related cumulative trauma injury to her back and neck in the course of her employment which first manifest[ed] November 8, 2007." She explained her cumulative trauma injury had manifested on that date because "she presented to Ford Medical November 8, 2007 with neck pain after leaning over the frame to put in the wire loom."

In his June 11, 2018 Opinion and Order, the ALJ held that for cumulative trauma injury, the date a claimant is advised by a physician that she has a work-related condition is the date of injury for statute of limitations purposes. *Consol of Ky., Inc. v. Goodgame,* 479 S.W.3d 78 (Ky. 2015). The ALJ reasoned that a claimant is not required to self-diagnose a harmful change as being a work-related injury for the purpose of giving notice, citing *American Printing House for the Blind v. Brown,* 142 S.W.3d 145, 148 (Ky. 2004). Although Ford argued that Duckworth knew her condition was work-related as early as November 8, 2007, her back condition was not listed as an injury until October 10, 2011. In an office record dated March 22, 2010, Dr. Chou noted that the cause of Duckworth's condition was due to repetitive injury. Therefore, the ALJ concluded that the dates of discovery, for notice and manifestation purposes, of her cumulative trauma neck and back injury were March 22, 2010 and October 10, 2011, respectively.

Kentucky Revised Statute (KRS) 342.185(1) states:

> If payments of income benefits have been made, the filing of an application for adjustment of claim with the department within the period shall not be required, but shall become requisite within two (2) years following the suspension of

5

payments or within two (2) years of the date of the accident, whichever is later.

The parties stipulated that the last TTD payment was made to Duckworth on August 5, 2011.[1]  Because Duckworth filed an application for benefits on June 10, 2013, she filed her claim within two years of the date of the last TTD payment.  Accordingly, the ALJ found the claim was not time-barred.

Ford filed a petition for reconsideration, emphasizing the fact that Duckworth was being treated at the Ford medical facility for work-related neck and back pain since 2007.  In the order on reconsideration, the ALJ explained that no physician informed Duckworth her neck and back pain were work-related in 2007.  He acknowledged that Duckworth told the Ford medical personnel her own belief that the pain was work-related but concluded that self-diagnosis is not the standard used to determine a manifestation date for cumulative trauma injury.  The petition was denied.

---

[1] The Benefit Review Conference order includes a table used to list stipulated dates on which TTD benefits were paid.  The table has five sections, and those sections list August 6, 2010, June 24, 2011, July 22, 2011, July 29, 2011 and August 5, 2011 as stipulated payment dates.  However, on the next page of the order under a section titled "Other Matters," it states, "TTD was also paid on 9/30/11, 10/7/11, 10/14/11 through 10/16/11, 4/12/13, 5/12/13."  On April 12, 2012, Duckworth was struck on the head by a piece of handheld equipment and on October 2, 2012, she fell in the parking lot leaving work.  The injuries related to these particular TTD payments are unclear.  The ALJ's opinion states that the parties stipulated that the last TTD payment was August 5, 2011, but the Ford medical facility records indicate that the October 14, 2011 payment was related to a cervical epidural injection, which relates to the neck injury.  The discrepancy in the ALJ stating the last TTD payment was stipulated as occurring on August 5, 2011, when in fact it appears a neck-related TTD payment was made on October 14, 2011, has no bearing on the statute of limitations issue because it would merely extend the two-year period in which Duckworth was required to file her claim under KRS 342.185(1).

6

On appeal to the Workers' Compensation Board (Board), Ford argued the ALJ exceeded the scope of his authority when he *sua sponte* determined Duckworth's cumulative trauma injury manifested on March 22, 2010. Ford argued that Duckworth stipulated the manifestation date of her injury as November 8, 2007, and the ALJ was bound to accept that stipulation. Accordingly, Ford argued the claim was time-barred. Alternatively, Ford argued it was denied due process of law when the ALJ selected a manifestation date which was not offered by the parties in the Benefit Review Conference order.

The Board affirmed the ALJ's opinion and order on reconsideration. The Board disagreed with Ford's argument that Duckworth stipulated a cumulative trauma manifestation date of November 8, 2007. In cumulative trauma injury claims, "manifestation" can have dual meanings. The date an injury manifests might refer to the date when symptoms or disability arise and may constitute the starting date for liability. *Am. Printing House,* 142 S.W.3d at 147-48. The Board concluded that this meaning differs from the manifestation date for notice and statute of limitations purposes. The ALJ correctly concluded that the date for triggering the running of the limitations period and for giving notice in a cumulative trauma injury claim is when the worker has knowledge that a harmful change has occurred and is informed by a physician that it is work-related. *Hill v. Sextet Mining,* 65 S.W.3d 503, 507 (Ky. 2001). The parties identified the dates of injury as "at issue" and nowhere in the Benefit Review

Conference order do the parties stipulate a date of manifestation for notice and statute of limitations purposes.

The Board also disagreed that the ALJ was bound to select one of the identified injury dates in determining manifestation dates. Because a cumulative trauma injury was alleged in the claim, implicit in the adjudication of such a claim is the necessary determination of a manifestation date. The ALJ is vested with the discretion to weigh the proof and adjudicate the claim. The Board also rejected Ford's assertion that it had been denied due process of law. Procedural due process requires a party to enjoy the opportunity to be heard at a reasonable time and in a reasonable manner. *Mathews v. Eldridge,* 424 U.S. 319, 333 (1976). At the beginning of the litigation Ford filed a special answer alleging Duckworth's claim was time-barred, precluding Ford from now arguing it was deprived of the opportunity to be heard on this issue when it specifically raised the argument in its answer.

In its appeal to the Court of Appeals, Ford argued that throughout the entirety of the case it approached its defense based on Duckworth's alleged November 8, 2007 cumulative trauma injury manifestation. Further, Ford and Duckworth "were of accord that if [Duckworth] suffered cumulative trauma injury to her neck and back, the manifestation date for the injuries was that alleged by [Duckworth], November 8, 2007." Ford also argued that the ALJ's decision to look beyond Duckworth's understanding of the word "manifestation" in order to determine when Duckworth's claim accrued was a violation of its procedural due process rights.

8

The Court of Appeals affirmed the Board, agreeing and incorporating the reasoning of both the ALJ and the Board. Ford offered no supporting law that an ALJ lacks the authority to determine the manifestation date of cumulative trauma injury according to the law and evidence presented. Ford acknowledged that no physician expressed an opinion to Duckworth on November 8, 2007 that she was suffering from a work-related, cumulative trauma injury. In the appellate court's view, Ford's assertion that it and Duckworth were "of accord" regarding the manifestation date of her injury is disingenuous given that Ford has acknowledged that "manifestation" relates to the date a claimant is informed by a physician that an injury is work-related.

Ford now appeals, arguing that the Court of Appeals erred in affirming the Board. Ford maintains that the ALJ's award was arbitrary and capricious; that the ALJ exceeded his authority under KRS 342.270(1) and 803 Kentucky Administrative Regulation (KAR) 25:010 § 13(12) in adjudicating uncontested issues; and that its due process rights were violated.

## ANALYSIS

### I. The ALJ Had the Authority to Determine the Manifestation Date of Duckworth's Cumulative Trauma Injury.

Ford argues that the ALJ exceeded his authority in determining the manifestation dates for Duckworth's injury. The scope of an ALJ's authority is a question of law, which we review de novo. *Ford Motor Co. v. Jobe,* 544 S.W.3d 628 (Ky. 2018).

KRS 342.185(1) requires a claimant to make a claim within two years of the date of the accident or within two years of the suspension of payments of

9

income benefits, whichever is later. Cumulative trauma injuries "are the result of trauma and . . . they develop over time." *Consol*, 479 S.W.3d at 82. The triggering of the statute of limitations differs for single-event injury claims and cumulative trauma injury claims. *Id.* "[F]or cumulative trauma injuries, the obligation to provide notice arises and the statute of limitations does not begin to run until a claimant is advised by a physician that he has a work-related condition." *Id.*

A claimant is not required to self-diagnose the harmful change as being a work-related injury for the purpose of giving notice. *Am. Printing House*, 142 S.W.3d at 148. Therefore, it is immaterial that Duckworth listed November 8, 2007 as the date her injury manifested on her application for benefits. The medical records reveal that Dr. Chou informed Duckworth that her cumulative trauma neck injury was work-related on March 22, 2010. As for her low back injuries, the ALJ stated that

> [o]n October 10, 2011, Ford listed her condition as an "injury" for the first time. The Ford Motor records establish that she was told that her low back was work-related on October 10, 2011. . . . The ALJ relies on the Ford Motor records to find that her date of discovery of her cumulative trauma low back injuries, for purposes of notice and manifestation, occurred on October 10, 2011.

We note that in this October 10 record no physician's signature appears– only a nurse's signature. While it is unclear whether this is the record the ALJ relied on in determining that Duckworth was informed of the work-relatedness of her low back injury on October 10, 2011, it ultimately makes no difference to the disposition of the statute of limitations issue. As the ALJ found, Ford paid TTD benefits to Duckworth for her low back injury, beginning in August 2010

10

and concluding on August 5, 2011. Therefore, if and when she was informed by a physician, not a nurse, that her back condition was work-related is not necessarily dispositive of the running of the two-year statute of limitations. As noted, KRS 342.185(1) requires a claimant to file her claim by **the later** of either the manifestation date, *i.e.* the date a claimant is informed by a physician that her cumulative trauma injury is work-related, or the date of the last payment of income benefits. Here, Duckworth satisfied this requirement by filing her claim within two years of August 5, 2011, the last TTD payment date.[2] Since she filed her claim on June 10, 2013, it was not time-barred by KRS 342.185(1), and the ALJ did not exceed his authority under KRS 342.270(1).

We further reject Ford's argument that Duckworth stipulated to a manifestation date of November 8, 2007. That date was her first visit to the Ford medical facility. The Benefit Review Conference order identifies the "dates of injury" as "at issue" twice. 803 KAR 25:010 § 13(11) states:

> If at the conclusion of the BRC the parties have not reached agreement on all the issues, the administrative law judge shall:
>
> > (a) Prepare a final BRC memorandum and order including stipulations and identification of all issues, which shall be signed by all parties or if represented, their counsel, and the administrative law judge; and

---

[2] *See* n.1. The Ford medical facility records on the dates that TTD benefits were paid state that on most of these dates Duckworth was paid TTD benefits because she missed work to receive epidural injections. Duckworth missed work on August 6, 2010, June 24, 2011, July 22, 2011, August 5, 2011, and October 14, 2011 for neck/cervical epidural injections. She missed work on September 30, 2011 for a low back/lumbar epidural injection. The July 29, 2011 and October 7, 2011 records do not specify what type of epidural injections she received.

11

(b) Schedule a final hearing.

An ALJ is bound by the parties' voluntary stipulations. *Hale v. CDR Operations, Inc.,* 474 S.W.3d 129, 138 (Ky. 2015). If a date of manifestation is stipulated, it is not an issue before the ALJ for adjudication. *Id.* In this case, the ALJ identified the stipulations the parties agreed to and specifically identified the contested issues which required further adjudication, including the dates of injury.

803 KAR 25:010 § 13(12) states that "[o]nly contested issues shall be the subject of further proceedings. Ford argues that the ALJ exceeded his authority under 803 KAR 25:010 § 13(12) by adjudicating uncontested issues. While Ford insists that the date of injury was uncontested, the Benefit Review Conference order plainly indicates otherwise. The parties did not agree on the manifestation of Duckworth's injury, making that issue subject to further proceedings. Because the parties did not agree on the manifestation date, the ALJ, as fact-finder, had to make that determination and, contrary to Ford's argument, the ALJ's findings on the issue of manifestation were not made *sua sponte.*

In *Consol,* 479 S.W.3d at 84, this Court specifically remanded a workers' compensation claim for the ALJ to determine when the claimant was advised that he suffered from a work-related cumulative trauma injury. On remand, the ALJ was also instructed to determine whether the claimant filed his claim within two years of that date. *Id.* Therefore, the manifestation date is a necessary determination in cumulative trauma injury claims. This

12

determination establishes whether a claimant provided timely notice or timely filed her claim. As with other issues, "[t]he ALJ as fact finder has the sole authority to judge the weight, credibility, substance, and inferences to be drawn from the evidence." *LKLP CAC Inc. v. Fleming,* 520 S.W.3d 382, 386 (Ky. 2017). The ALJ relied on the medical evidence in the record in identifying the manifestation dates of Duckworth's injury and did not exceed the scope of his authority. The ALJ then properly applied KRS 342.185(1) in determining which occurred later–the manifestation date or date of last TTD payment–before then correctly concluding that Duckworth filed her claim within two years of the later date.

## II. Ford Was Not Deprived of Due Process Because It Had Adequate Notice and Ample Opportunity to Be Heard on the Statute of Limitations Issue.

Ford argues that it did not have reasonable notice that the ALJ would consider March 22, 2010 and October 10, 2011 as potential manifestation dates for Duckworth's cumulative trauma injury. As such, Ford insists it was denied due process of law by the ALJ's determination of the manifestation date. The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews,* 424 U.S. at 333 (internal citations omitted). Because Ford had ample time and opportunity to be heard on the statute of limitations issue, it was not denied due process.

Ford asserts that there was no mention of Duckworth suffering cumulative trauma injury that manifested on these dates. While these dates were not listed as dates at issue in the Benefit Review Conference order, the

following were listed as "at issue": (1) whether Duckworth sustained a work-related injury; (2) dates of injuries; (3) whether Ford received due and timely notice of Duckworth's injuries; and (4) whether Duckworth retained the physical capacity to return to the type of work performed at the time of the injury. Additionally, in the checklist of issues subject to further proceedings, the order lists work-related injury, date of injury, due and timely notice, TTD benefits paid, and statute of limitations as being subject to further proceedings.

On these facts, it is disingenuous for Ford to argue that it was deprived of reasonable notice of the matters at issue and an opportunity to be heard. The Benefit Review Conference order was entered on January 8, 2018, over three weeks before Ford filed its brief before the ALJ on February 1, 2018. Further, in response to Duckworth's workers' compensation claim, Ford filed a special answer on July 12, 2013 to specifically assert a notice and statute of limitations defense. An ALJ is not confined to selecting the claimant's identified injury date in determining the manifestation of a cumulative trauma injury (or, for that matter, the date identified by the employer). We reiterate that the ALJ, as fact-finder, is vested with the authority and discretion to consider all the proof and adjudicate the claim on the basis of the record before him or her. Here, the ALJ did exactly that.

## CONCLUSION

For the reasons stated, we affirm the Court of Appeals' decision affirming the Board and upholding the ALJ's opinion and order.

All sitting. All concur.

14

COUNSEL FOR APPELLANT:

Joshua Wininster Davis
Priscilla Coleman Page
O'BRYAN, BROWN & TONER, PLLC


COUNSEL FOR APPELLEE, DEBORAH
DUCKWORTH:

Melissa Anderson Hofe
Stephanie Nicole Wolfinbarger
COTTON WOLFINBARGER & ASSOCIATES, PLLC


ADMINISTRATIVE LAW JUDGE:

John H. McCracken


WORKERS' COMPENSATION BOARD:

Michael Wayne Alvey, Chairman