RENDERED: JUNE 9, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1380-WC

MARQUIS CARTER                                                APPELLANT

v.
PETITION FOR REVIEW OF A DECISION
OF THE WORKERS' COMPENSATION BOARD
ACTION NO. WC-21-00849

WEBASTO ROOF SYSTEMS;
HONORABLE THOMAS POLITES,
ADMINISTRATIVE LAW JUDGE;
AND WORKERS' COMPENSATION
BOARD                                                         APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, GOODWINE, AND McNEILL, JUDGES.

CALDWELL, JUDGE: Marquis Carter ("Carter") petitions this Court for review

of a Workers' Compensation Board ("Board") opinion. We affirm.

# FACTS

Carter was employed by Webasto Roof Systems ("Employer") for many years. He asserts he developed low back pain resulting from repetitive work activities in August 2019.

Carter was treated for back pain – described as work-related in doctor's notes – in 2016. But according to him, his prior back problems had completely resolved before he began having back pain again in 2019.

In late August 2019, Carter saw his doctor for back pain. In June 2021, he filed a workers' compensation claim alleging a cumulative trauma injury to his back. Employer filed a special answer raising a statute of limitations defense since Carter was treated for work-related back pain in 2016.

After an evidentiary hearing, the Administrative Law Judge ("ALJ") issued an Opinion, Award, and Order ("ALJ Decision"). The ALJ rejected Employer's argument that the claim was time-barred.

The ALJ found Carter's testimony credible that he had fully recovered from the back problems he experienced in 2016. And the ALJ noted Carter's primary doctor's records showed no treatment for low back problems from late 2016 until late August 2019 despite several doctor's visits during this time period – including a July 2019 annual physical where Carter denied having any back pain.

The ALJ concluded Carter suffered no permanent cumulative trauma injury in 2016 but did suffer a permanent cumulative trauma injury in August 2019.

The ALJ determined that Carter had proven a compensable injury and awarded him medical expenses and permanent partial disability ("PPD") benefits. The ALJ noted both Dr. Nazar and Dr. Snider assigned a whole person impairment ("WPI") rating of six percent due to the low back condition, but apportioned part of this impairment to non-work-related factors.

The ALJ rejected Carter's argument that he was entitled to benefits based on the full 6% WPI, concluding that the evidence – including unanimous medical testimony – compelled a finding that only part of the impairment was work-related:

> As to Plaintiff's [Carter's] argument that he should be entitled to PPD benefits based upon a full 6% impairment rating, Plaintiff is correct that there is no degree of a pre-existing impairment rating in this matter. However, this argument ignores the fact that both medical experts apportioned a percentage of their impairment rating to non-work-related factors which precludes an award of the full 6%. Dr. Snider clearly attributed half of his 6% rating to non-work-related factors which he described as "age, habitus, altered gait from remote left knee injury, diabetes and other avocational activities." In addition, Plaintiff's own expert, Dr. Nazar, apportioned 80% of his 6% rating to what he called "pre-existing symptoms" but it is apparent from his conclusions that what he called "pre-existing" actually meant "non-work-related" as he specifically stated that he based his apportionment opinion on the fact that Plaintiff was "62 years of age, likely has genetic

predisposition to this [low back problems], and had ongoing degenerative changes in his back with a history of milder lower back pain". Dr. Nazar further specifically stated that only 20% of his 6% rating was due to the "work process and the cumulative work trauma itself." Lastly, he did not state that Plaintiff suffered from a pre-existing, dormant, nondisabling condition that was aroused into disabling reality by the work activities which would have supported Plaintiff's argument in this regard. As such, the evidence in this claim is compelling that only a portion of Plaintiff's impairment is attributable to his work for the Defendant and therefore Plaintiff is not entitled to the full 6% impairment as an apportionment between the work-related and non-work-related causal factors is required based upon the unanimous medical testimony.

The ALJ found Dr. Snider's opinion that half of the 6% WPI was work-related more persuasive than Dr. Nazar's opinion. So, the ALJ determined that Carter was entitled to benefits based on a three percent impairment rating in reliance on Dr. Snider's opinion.

Carter filed a petition for reconsideration to the ALJ, again arguing he was entitled to benefits based on six percent impairment. Carter asserted a portion of Dr. Nazar's report referred to an arousal of pre-existing degenerative changes. Employer did not file a petition for reconsideration.

In the order ruling on the motion for reconsideration, the ALJ corrected prior findings to reflect that Dr. Nazar did refer to an arousal of pre-existing degenerative changes. But the ALJ did not ultimately change the award of

benefits based on the three percent permanent impairment rating since the ALJ relied on Dr. Snider's opinion rather than Dr. Nazar's opinion on this matter.

Carter then filed an appeal with the Board. Employer filed a cross-appeal on the statute of limitations issue.

Carter argued to the Board that the apportionment method used by both Dr. Snider and Dr. Nazar was contrary to Kentucky law. He argued there was no medical evidence of a pre-existing, ratable, symptomatic impairment prior to August 2019. Citing *Finley v. DBM Technologies*, 217 S.W.3d 261 (Ky. App. 2007), he argued the ALJ's "carve out" of 3% of the impairment as non-work-related was improper and not in conformity with the American Medical Association's *Guides for the Evaluation of Permanent Impairment* (5th ed.) (the "*Guides*").

Despite Carter's arguments for a six percent impairment rating, the Board affirmed the ALJ's assessment of a three percent impairment rating based on Dr. Snider's opinion. The Board noted that the ALJ had relied exclusively on Dr. Snider's opinions and impairment rating, so it was not necessary to determine if Dr. Nazar's opinion conformed with case law or the *Guides*. And it further noted Dr. Snider did not opine that Carter suffered from any "pre-existing" condition but simply attributed 50% of the low back impairment to non-work-related factors.

Because Dr. Snider did not opine that Carter had a pre-existing active condition, the Board held Dr. Snider did not have to "render opinions consistent with the standards articulated in *Finley*" for the ALJ to rely on Dr. Snider's impairment rating.

The Board construed Dr. Snider's opinions as referring to causation but not apportionment. And it concluded Dr. Snider's opinions and impairment rating were substantial evidence upon which the ALJ could properly rely. As it determined the ALJ's findings of fact were supported by substantial evidence, the Board deferred to the ALJ's resolution of conflicting evidence based on the ALJ's assessment of the weight and credibility of the evidence concerning impairment.

Though it affirmed the ALJ on impairment, the Board remanded to the ALJ to determine a manifestation date for the cumulative trauma injury in accordance with statutory standards and case law. On remand, the Board directed the ALJ to determine whether Carter filed his claim within two years of the manifestation date – if not, the ALJ should dismiss the claim; but if so, the ALJ could reinstate the order and award based on Dr. Snider's impairment rating. Carter then filed his petition for review with this Court.

Carter contends the ALJ should have awarded him benefits based on the full 6% WPI from the low back condition and the Board erred in affirming the ALJ. He also argues the Board erred in remanding to the ALJ to determine a

manifestation date before considering afresh whether the claim is time-barred.

Employer disagrees with Carter's arguments and further asserts that the claim must

be dismissed as time-barred.

## ANALYSIS

### Standard of Review

"This Court's standard of review in workers' compensation appeals is

well-settled in the Commonwealth." *Roberts v. Commonwealth Dodge*, 644

S.W.3d 543, 544 (Ky. App. 2022). Our task is to review the Board's opinions and

"to correct the Board only where [the] Court perceives the Board has overlooked or

misconstrued controlling statutes or precedent, or committed an error in assessing

the evidence so flagrant as to cause gross injustice." *Id.* (quoting *Western Baptist

Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992)).

Applying this standard of review, we must affirm the Board's decision

based on our review of the record and applicable law.

## I. No Reversible Error in Board's Affirming ALJ's Impairment Rating

### A. No Reversible Error in Affirming Impairment Rating Based on *Guides*

Carter contends the Board erred in affirming the ALJ's impairment

rating relying on Dr. Snider's opinion concerning apportionment. Carter argues

that Dr. Snider's apportionment analysis is not in conformity with the 5th edition

of the *Guides*.[1]  As he points out, an ALJ has discretion to choose which of conflicting medical opinions to believe, but an ALJ cannot validly rely on a physician's impairment rating which is not based on the *Guides*.  *Jones v. Brasch-Barry General Contractors*, 189 S.W.3d 149, 153 (Ky. App. 2006).

Dr. Snider's report states:  "According to the AMA *Guides*, 5th Edition, for Mr. Carter's lumbar [low back] condition, estimate 6% WPI."  Next, his report states his opinion that half of "this" is due to "avocational" or non-work-related factors and half due to "aggravation over the last four or so years of his employment at Webasto" – without expressly stating that this finding is according to or based on the *Guides*.  Dr. Snider assessed a 3% WPI for "assumed cumulative trauma."

Carter contends that Dr. Snider's assessment of 6% WPI for his low back condition is based on the *Guides*, but that Dr. Snider's apportioning half of this impairment to non-work-related factors is not based on the *Guides*.  Certainly Dr. Snider did not state the apportionment was based on the *Guides* with the same specificity and clarity that he stated the 6% WPI for the low back condition was based on the *Guides*.  However, perhaps the ALJ construed Dr. Snider's report as

---

[1] Though a 6th edition of the *Guides* was apparently published by about 2022, Kentucky workers' compensation statutes still refer to the 5th Edition and the 5th Edition still appears to apply to Kentucky workers' compensation proceedings as of the date of this opinion.  *See generally* Kentucky Revised Statutes ("KRS") 342.0011(37)(a); KRS 342.262.

opining that the apportionment was also based on the *Guides* or at least was not inconsistent with the *Guides*. And Dr. Snider did not clearly state any disagreement with the *Guides* or refusal to apply any provision of the *Guides* – unlike the doctor's opinion relied on by the ALJ in *Jones*, 189 S.W.3d at 153-54.

Although Carter argued to the Board that Dr. Snider's apportionment did not comply with the *Guides*, the Board only discussed this issue briefly. The Board quoted Dr. Snider's opinion that "[a]ccording to the AMA Guides," he estimated 6% WPI for the low back condition and that half of the impairment was due to "avocational factors" and half due to "aggravation" over the last four or so years of Carter's work for Employer. And the Board noted the ALJ had the discretion to choose which medical opinion to believe so long as that opinion was based on the *Guides* (citing *Jones*, 189 S.W.3d at 153).

Unlike the Board's opinion, both parties discuss the *Guides* in some detail in the petition for review and response. Both parties quote portions of Section 1.6 of the *Guides* (5th ed.) in their briefs. Though the *Guides* are not easily accessible to this Court via Westlaw or similar resources, we obtained a copy of Section 1.6 from the *Guides* (5th ed.) with assistance of the state law library and have reviewed the text.[2]

---

[2] Though not strictly required by any court rule, it would be helpful for parties which rely on portions of the *Guides* to attach a copy of the cited portion of the *Guides* in the appendices to their appellate briefs to permit easier review by the Court in the future.

Carter quotes specific language in Section 1.6(b) indicating that for spinal impairment cases, one should first calculate the current spinal impairment and then separately calculate any pre-existing impairment before subtracting the latter from the former. Employer suggests this is essentially what Dr. Snider did in his report, despite Carter's assertions this was either not done or was not done in a proper manner according to the *Guides*.

Employer also points out the language about determining pre-existing and current spinal impairments was provided as an example in Section 1.6(b). It argues that this "carve-out" method is appropriate for acute spine injury cases but asserts this method is not appropriate for cumulative trauma cases as: "Cumulative trauma injuries develop over time, as do impairments to the spine as a result of natural aging, obesity, altered gait, diabetes, etc."

Carter argues that there should be objective and comparable data for both the pre-existing impairment and for the current impairment. And he asserts that to comply with the *Guides*, Dr. Snider should have separately discussed each non-work-related factor such as diabetes, age, habitus, *etc*. and calculated a separate impairment rating for each factor.

Employer does not agree that such specific discussion of every non-work-related factor is required under the *Guides*. It asserts Dr. Snider complied with general requirements for apportionment analysis in Section 1.6(b) such as

-10-

making sure that each factor – which could include a pre-existing illness or injury or impairment – is supported by documentation. It notes there is documentation of non-work-related factors such as diabetes and age in Carter's medical records, which Dr. Snider reviewed and discussed in his reports.

Employer further asserts that the *Guides* do not even mention cumulative trauma. We have not been able to verify whether any other portion of the *Guides* not cited to us discusses apportionment in cases of cumulative trauma or gradual injury or other words to the same effect. But Section 1.6 of the *Guides* (5th ed.) – which was cited to us and which we have reviewed – does not explicitly state whether principles of apportionment discussed therein apply to cumulative trauma cases as well as to acute injury cases.

We cannot – and need not – fully resolve the interesting questions raised by the parties about what a doctor must do to comply with apportionment analysis requirements in the *Guides* in cumulative trauma cases. The *Guides* appear to be written primarily for the benefit of physicians rather than lawyers or judges. Though sometimes even a non-medical person can easily see a doctor's opinion is not based on the *Guides* based on the doctor's express refusal to follow the *Guides*, *see Jones*, 189 S.W.3d at 153-54, other times – such as here – the issue of whether a doctor's opinion complies with the *Guides* is subject to different interpretations. And according to precedent from our Supreme Court which pre-

-11-

dates *Jones*: "the proper interpretation of the *Guides* and the proper assessment of an impairment rating are medical questions." *Kentucky River Enterprises, Inc. v. Elkins*, 107 S.W.3d 206, 210 (Ky. 2003).

Neither we nor the Board could properly permit an ALJ's reliance on a physician's impairment rating not based on the *Guides* to stand pursuant to *Jones*. But the parties raise interesting issues about whether Snider's apportionment is based on the *Guides*.

Under the facts here, the question of whether Dr. Snider's apportionment is based on the *Guides* requires interpretation of the *Guides* and is a medical question. *See Elkins*, 107 S.W.3d at 210. The question we must resolve, however, is a legal one – whether the Board properly affirmed the ALJ's impairment rating as not inconsistent with precedent such as *Jones* and as supported by substantial evidence.

Because Dr. Snider did not explicitly state any disagreement with or refusal to comply with the *Guides*, precedent does not clearly call for reversing the ALJ's reliance on his opinion as unsupported by substantial evidence. *See Jones*, 189 S.W.3d at 153-54 (ALJ's impairment rating not supported by substantial evidence because ALJ relied on opinion of doctor who refused to assess impairment within percentage range provided for condition's category in *Guides* based on personal disagreement with *Guides*); *see also Tokico (USA), Inc. v. Kelly*,

281 S.W.3d 771, 775 (Ky. 2009) (distinguishing *Jones* from case in which the ALJ simply chose among doctor's opinions which interpreted the *Guides* differently in rating impairment rather than relying on a doctor's opinion explicitly refusing to comply with the *Guides*).

As Dr. Snider's opinion was not explicitly rendered in contravention of the *Guides* and all or part of it was rendered "[a]ccording to the *Guides*," nothing prevented the ALJ from considering his opinion – along with other medical evidence – in our view.

Long-standing Kentucky precedent states: "The ALJ, as the finder of fact, and not the reviewing court, has the sole authority to determine the quality, character, and substance of the evidence." *Square D Co. v. Tipton*, 862 S.W.2d 308, 309 (Ky. 1993). And when the medical evidence is conflicting, "the question of which evidence to believe is the exclusive province of the ALJ." *Id*.

Both Dr. Nazar and Dr. Snider concluded Carter had a 6% WPI from his low back condition according to the *Guides*. Their opinions differed primarily in the degree to which they believed this impairment was caused by Carter's work for Employer.

The ALJ resolved this conflict in the medical opinions, finding Dr. Snider's conclusion that half of the impairment was due to cumulative trauma at

-13-

work more persuasive than Dr. Nazar's conclusion that a greater portion of the impairment was due to other factors.

Carter argues that the ALJ should have accepted Dr. Snider's 6% WPI rating but should disregard Dr. Snider's apportioning half of this impairment or 3% WPI to non-work-related factors. But Carter does not point to any medical opinion in the evidence which expressly concludes the impairment from the low back condition **was** entirely due to work rather than other factors. And the ALJ perceived he was faced with conflicting medical opinions whether **half** or **less** of the impairment was work-related.

The ALJ chose to rely on Dr. Snider's opinion about how much of the impairment was work-related and thus assessed a three percent impairment rating for a cumulative trauma work injury. In so doing, the ALJ exercised his sole prerogative to determine which of conflicting medical opinions to believe based on his assessment of the credibility and weight of the evidence. *See Square D*, 862 S.W.2d at 309.

Given the lack of explicit deviation from the *Guides* in Dr. Snider's report, we do not perceive that the Board committed a flagrant error in assessing the evidence. Nor do we perceive that the Board overlooked or misconstrued controlling authority such as *Jones* in affirming the ALJ's reliance on Dr. Snider's opinion and rejecting Carter's argument that Dr. Snider's opinion was not based on

the *Guides*.  Thus, there is no reason for us to correct the Board concerning any issues about whether Dr. Snider's opinion was properly based on the *Guides*.  *See Kelly*, 827 S.W.2d at 687-88.

### B.  No Reason to Reverse Impairment Rating under *Finley*

Carter also argues that the Board erred in affirming the ALJ because, in his view, Dr. Snider's apportionment failed to comply with requirements in *Finley*, 217 S.W.3d at 261.  Employer does not expressly discuss *Finley* in its response to his petition for review.

The Board noted the ALJ relied solely on Dr. Snider's opinion so it was not necessary to determine if Dr. Nazar's opinion was consistent with *Finley*. And it noted that Dr. Snider did not find a pre-existing active condition.  So, it concluded *Finley*'s standards were not applicable.  The Board also construed Dr. Snider's opinions as relating to causation rather than apportionment.  So, it concluded Dr. Snider's opinions and impairment ratings were substantial evidence upon which the ALJ could properly rely.

Carter argues the Board erroneously attempted to separate issues of apportionment and causation, noting the *Guides* discuss how apportionment analysis requires allocating causation among various factors.  He submits that perhaps his argument about *Finley* was confusing to the Board.  But he contends *Finley* "indirectly applies because Dr. Snider assigned a 3% whole body

impairment to conditions that were already in existence." (Petition for Review, page 12.) He argues but for the work injury there would be no impairment. He asserts it only makes sense to view his work injury as an arousal of pre-existing dormant factors into disabling reality and that Dr. Snider's apportioning half his impairment to non-work causes does not comply with *Finley*'s requirements.

Though Employer does not expressly discuss *Finley* or other case law concerning apportionment of causation or pre-existing conditions in its response, its brief suggests it does not make sense to apply the same pre-existing condition analysis requirements from acute injury cases to cases of cumulative trauma or gradual injury. As it points out, both cumulative trauma and certain medical conditions such as age-related degenerative disease or diabetes may develop gradually over time – making it hard to identify whether and to what extent certain medical conditions pre-exist cumulative trauma or gradual injury.

In *Finley*, the claimant suffered an acute work injury and had a pre-existing congenital condition (scoliosis). 217 S.W.3d at 263. The ALJ found persuasive Dr. Clendenin's opinion that the acute work injury "exacerbated" the congenital scoliosis. *Id*. Based on Dr. Clendenin's opinion that the acute work injury by itself resulted in ten percent impairment to the body as a whole, the ALJ awarded income benefits based on a ten percent impairment rating. *Id*. at 263-64.

The ALJ did not award Finley any medical expenses related to scoliosis, but only those directly resulting from the acute work injury. *Id*. at 264.

Upon review in this Court, we noted Dr. Clendenin had assessed an impairment rating of twenty-three percent, with ten percent due to the acute work injury and the other thirteen percent due to congenital scoliosis. *Id.* at 264. Despite the ALJ's finding the acute work injury "exacerbated" the congenital scoliosis, we noted the ALJ did not make a finding whether the scoliosis was previously dormant or was aroused into disabling reality by the acute work injury. And we determined the undisputed medical evidence compelled a finding the scoliosis was previously dormant and aroused into disabling reality by the acute work injury. *Id*. at 266. As the scoliosis was not previously active or impairment ratable, this Court reversed the ALJ's determination that Finley could not recover any medical expenses or income benefits related to scoliosis since a work-related arousal of a previously dormant condition into a disabling reality is compensable. *Id*. at 265-66 (citing *McNutt Construction/First General Services v. Scott*, 40 S.W.3d 854 (Ky. 2001)).

*Finley* does not explicitly limit its holdings about pre-existing conditions to cases of acute injury rather than cumulative trauma. Nonetheless, the ALJ here relied on a doctor's opinion which did not explicitly find any pre-existing condition – much less indicate that a previously dormant condition had been

-17-

aroused into disabling reality. So, we do not believe the Board committed flagrant error in assessing the evidence resulting in gross injustice nor misconstrued precedent in holding that *Finley* did not apply to Dr. Snider's opinion. *See Kelly*, 827 S.W.2d at 687-88.

Furthermore, instead of discussing how an acute work injury and a pre-existing medical condition contributed to causing a worker's impairment, Dr. Snider's opinion addressed what portion of the impairment from the low back was due to a gradual work injury and what portion was due to other medical factors – many of which gradually developed over time. This was consistent with our statutory guidelines for determining one's permanent impairment rating.

As defined by KRS 342.0011(35), one's permanent impairment rating consists of the portion of whole-body impairment caused by the injury. And KRS 342.0011(1) defines *injury* for these purposes as traumatic work event(s) causing harmful change – not including the natural effects of aging – to the human body.

Dr. Snider's opinion addressed what portion of the whole-body impairment from the low back was due to cumulative trauma from work events and what portion was due to non-work factors. Since *Finley* requirements did not clearly apply to Dr. Snider's opinion since he did not find a pre-existing condition or arousal of a dormant condition into disabling reality, his opinion and impairment ratings were substantial evidence upon which the ALJ could properly rely. So, the

Board properly affirmed the ALJ's impairment rating based on Dr. Snider's opinion.

In sum, we conclude that the Board did not overlook or misconstrue controlling statutes or precedent in affirming the ALJ's determination that Carter did not prove an arousal of a pre-existing dormant condition into a disabling reality and was therefore not entitled to benefits for the full 6% WPI for the low back condition. Nor do we perceive that it committed an error in assessing the evidence so flagrant as to cause gross injustice regarding this issue. *See Kelly*, 827 S.W.2d at 687-88. So, we affirm the Board's affirmance of the impairment rating.

Next, we consider whether the Board erred in vacating the award of PPD benefits and medical expenses and remanding to the ALJ to determine a manifestation date before considering afresh whether the claim was time-barred.

## II. No Reversible Error in Board's Remanding to ALJ to Determine Manifestation Date Before Determining Whether Claim Was Time-Barred

Carter contends that the Board's remanding to the ALJ to determine a manifestation date before considering afresh whether the claim was time-barred was unnecessary and erroneous. In contrast, Employer does not directly challenge the remand, but argues the claim must be dismissed as time-barred.

Employer points to medical records indicating Carter was told back problems he was experiencing in 2016 were work-related. However, the ALJ determined that the back problems Carter experienced in 2016 had fully resolved

before Carter suffered a separate injury culminating in his seeking medical treatment in 2019. And the Board did not expressly reverse this determination.

Furthermore, the Board did not definitively conclude whether the claim was time-barred. Instead, the Board simply remanded to the ALJ to determine a manifestation date before determining whether the claim was timely filed within two years of that date. Employer did not file a cross-petition for review on this issue.

In sum, we reject Employer's argument that it is automatically entitled to dismissal of the claim as time-barred based on the 2016 medical records. We also reject Carter's argument that the remand for further findings must be reversed.

Carter argues the Board erred in remanding for determination of a manifestation date. He notes the ALJ accepted his assertion that prior back problems from 2016 had fully resolved before he began experiencing back pain in 2019. Carter also points out that although the ALJ did not expressly refer to any manifestation date, the ALJ determined he suffered a cumulative trauma injury on August 20, 2019. He asserts he could not have been told the injury was work-related before he suffered this permanent injury in August 2019 so his claim (filed in June 2021) was timely filed under KRS 342.185(3).[3]

---

[3] KRS 342.185(3) states: "The right to compensation under this chapter resulting from work-related exposure to cumulative trauma injury shall be barred unless notice of the cumulative trauma injury is given within two (2) years from the date the employee is told by a physician that

Carter also notes the ALJ found credible his testimony that he told Employer's human resources representative about his injury in August 2019. Therefore, he argues, he timely gave notice as of that date.

Despite these arguments, we discern no reversible error in the Board's remanding for the ALJ to determine a manifestation date under the proper standards before ruling on questions of notice or limitations. As noted in the Board's opinion, it is critical to determine a manifestation date before resolving issues about notice or statutes of limitation or repose in cumulative trauma cases.

Prior precedent generally defined a manifestation date in cumulative trauma or gradual injury cases to be the date the worker became aware he/she had sustained a disabling, work-related injury. *Alcan Foil Products, a Div. of Alcan Aluminum Corp. v. Huff*, 2 S.W.3d 96, 101 (Ky. 1999). Since laypersons could not be expected to diagnose the cause of their injuries, precedent held the date of manifestation for a gradual injury specifically referred to when a doctor provided a diagnosis and told the worker the injury was work-related. *Hill v. Sextet Min. Corp.*, 65 S.W.3d 503, 507 (Ky. 2001). In other words, "notice and limitations provisions [in KRS Chapter 342] were not triggered until [claimant] received a

---

the cumulative trauma injury is work-related. An application for adjustment of claim for compensation with respect to the injury shall have been made with the department within two (2) years after the employee is told by a physician that the cumulative trauma injury is work-related. However, the right to compensation for any cumulative trauma injury shall be forever barred, unless an application for adjustment of claim is filed with the commissioner within five (5) years after the last injurious exposure to the cumulative trauma."

-21-

medical diagnosis . . . ."  *American Printing House for the Blind ex rel. Mutual Ins. Corp. of America v. Brown*, 142 S.W.3d 145, 148 (Ky. 2004).  However, our Supreme Court has also stated:

> nothing prohibits a worker who thinks she has sustained a work-related gradual injury from reporting it to her employer before the law requires her to do so, and nothing prevents her from reporting an injury that she thinks is work-related before a physician confirms her suspicion.

*Id.* at 149.

After KRS 342.185 was amended in 2018, our Supreme Court recognized that KRS 342.185(3) now establishes a "bright-line two-year limitation period from the date the plaintiff is told her cumulative trauma is work-related." *Anderson v. Mountain Comprehensive Health Corporation*, 628 S.W.3d 10, 15 (Ky. 2021).  Consistent with KRS 342.185(3) and *Anderson*, the Board's opinion stated:  "the ALJ should have determined upon what date, if any, a physician diagnosed Carter's low back condition and informed him that it was work-related." (Page 17 of Board opinion, Administrative Record, page 444).  Clearly, the Board did not overlook or misconstrue controlling statutes or precedent in stating the ALJ should have made this determination.  Nor do we perceive any flagrant error in assessing the evidence resulting in gross injustice in this regard.  *See Kelly*, 827 S.W.2d at 687-88.

Furthermore, Employer's failure to file a petition for reconsideration does not change our view. We recognize Carter contends Employer has no right to question the ALJ's factual findings because it did not file a petition for reconsideration. *See* KRS 342.285(1).

But the Board not only indicated the ALJ should resolve any factual issues about a manifestation date; it also clearly directed the ALJ to determine the manifestation date under the proper standard set forth by law – specifically, KRS 342.185(3) and *Anderson*, 628 S.W.3d at 15. Thus, Employer's failure to file a petition for reconsideration did not preclude the Board from remanding for a determination of the manifestation date according to proper legal standards. *See* KRS 342.285(2)(c) (recognizing Board's authority to determine if ALJ decision "is not in conformity with" KRS Chapter 342 provisions); KRS 342.285(3) (recognizing Board's discretion to remand for further findings in conformity with its directions). *See also Whittaker v. Reeder*, 30 S.W.3d 138, 145 (Ky. 2000) (party's failure to file petition for reconsideration about application of legal precedent did not bar Board from exercising KRS 342.285(2)(c) authority to determine if award complied with KRS Chapter 342). Rather, the Board properly exercised its discretion to remand for further findings needed to comply with KRS Chapter 342 pursuant to KRS 342.285(2)(c) and (3).

Unlike sudden or acute injuries, a cumulative trauma injury by its nature does not occur solely on one particular day. As the Board noted, the ALJ did not clearly state why he found that a cumulative trauma injury occurred on August 20, 2019. And it is not clear that this finding amounted to a finding of manifestation date since the ALJ did not expressly state this is when a doctor diagnosed the back condition and said it was work-related. *See Anderson*, 628 S.W.3d at 15.[4] Given the bright-line rule recognized in *Anderson* – that a claim must be filed within two years of the claimant being informed by a doctor that the cumulative trauma injury is work-related to be timely, we discern no error in the remand to expressly find upon what date, if any, Carter was informed by a doctor that his cumulative trauma injury was work-related.

On remand, even though the ALJ accepted Carter's assertion that back problems he experienced in 2016 had fully resolved prior to his suffering a new cumulative trauma injury for which he sought treatment in August 2019, the claim would still be time-barred if the ALJ finds a doctor told Carter his cumulative trauma injury was work-related more than two years prior to the filing of his claim in June 2021. For example, if the ALJ finds on remand that a doctor told Carter he

---

[4] Nor did the ALJ expressly find that Carter first became aware that he had suffered a cumulative trauma injury and that the injury was work-related on August 20, 2019. *See Alcan*, 2 S.W.3d at 101.

had a cumulative trauma injury which was related to his work in February 2019, Carter's claim would be time-barred. But if the ALJ finds that a doctor told Carter he had a work-related cumulative trauma injury at some date within two years of the June 2021 filing of the claim (such as August 2019 or later), or even if the ALJ finds no doctor had told Carter this prior to Carter's filing his claim, Carter's claim would not be time-barred.

So, contrary to the parties' arguments, it is not entirely clear whether the claim is or is not time-barred without a finding of a manifestation date under the *Anderson* standard. The Board's remand for further findings on this issue was neither unnecessary nor erroneous.

In sum, there is no reason for us to reverse the Board's remand for further findings – as we do not perceive the Board overlooked or misconstrued controlling authority or committed egregious error in assessing the evidence resulting in gross injustice. *See Kelly*, 827 S.W.2d at 687-88. So, we must affirm on this issue as well.

## CONCLUSION

For the foregoing reasons, we affirm the Board's opinion affirming in part the ALJ's decision and remanding for further findings.

ALL CONCUR.

-25-

BRIEF FOR APPELLANT:        BRIEF FOR APPELLEE:

James D. Howes             Donald J. Niehaus
Louisville, Kentucky       W. Clayton Stone, II
                          Lexington, Kentucky