**OSBORNE MINING COMPANY, Appellant,**

**v.**

**Fraisher DAVIDSON et al., Appellees.**

Court of Appeals of Kentucky.

Oct. 28, 1960.

E. R. Hays, Baird & Hays, Pikeville, for appellant.

Francis M. Burke, F. Dale Burke, Pikeville, for appellee.

STEWART, Judge.

This appeal involves a claim under the Workmen's Compensation Act (herein referred to as the "Act") for total disability caused by the disease of silicosis alleged to have been incurred while appellee, Fraisher Davidson, was employed by appellant, Osborne Mining Company.

The Workmen's Compensation Board (herein referred to as the "Board") dismissed appellee's application. Upon appeal the circuit court set aside the order of dismissal and remanded the cause to the Board with directions that it award appellee full compensation benefits. This appeal followed.

On March 9, 1924, Fraisher Davidson, now about 58 years old, commenced working in a mine originally operated by Pond Creek Colliery and he continued to work in this same mine until September 18, 1958. His usual job was that of running a coal-cutting machine. The mine changed ownership on June 2, 1955, passing from Pond Creek Colliery to appellant, Osborne Mining Company.

In January, 1955, appellee, beginning to experience shortness of breath and have chest pains, went for an examination to one Dr. Boggs, the doctor retained by Pond Creek Colliery. Dr. Boggs referred appellee to a radiologist, Dr. G. N. Combs, of Williamson, West Virginia, and the latter's diagnosis of appellee was that he was suffering from silicosis in its second stage. Appellee and his employer, Pond Creek Colliery, were promptly informed of this diagnosis and appellee returned to the same work he had performed before it was determined he had this disease. The general superintendent, the general mine foreman, and the section foreman under whom appellee worked were also advised of appellee's silicotic condition, and appellee was thereafter seen by Dr. Boggs occasionally to check on his state of health.

On June 2, 1955, all employees of Pond Creek Colliery, including appellee, became employees of appellant automatically and simultaneously with the transfer of title to the mine to appellant. Also Dr. Boggs remained in appellant's employment, and appellee continued to consult with him and, later, with Dr. J. D. Amos, who succeeded Dr. Boggs as appellant's company physician.

On September 18, 1958, after working two hours, appellee became so disabled from his illness that he quit his job and has not worked since. In June of 1958, while appellee was "cut off" from work, he wrote a letter (by his attorney) which advised appellant that he had silicosis and was making a claim for compensation. Appellant did not answer the letter; but thereafter, through its superintendent, offered to return appellee to work. At this time, appellant had appellee examined by its company doctor who evidently thought he was fit for employment because he gave him a "work slip." Appellee went back to the mine on July 15, 1958, and remained on his job until September 18th. On November 18, 1958, appellee (through his attorney) again wrote appellant claiming compensation. Receiving no answer, he filed his application with the Board.

The Board ruled that appellee's rights were to be governed by the law in effect prior to August 1, 1956, namely, KRS 342.-005(2); that under this subsection the silicosis provisions of the Act must be voluntarily accepted by the parties; and that, as there was no evidence of special acceptance, the Board lacked jurisdiction to try and determine the claim.

The circuit court on appeal reversed the Board, adjudging appellant and appellee had stipulated appellee's claim should be determined in accordance with KRS 342.005 and KRS 342.395, which provisions, relating to silicosis, became the law on August 1, 1956, by virtue of a 1956 amendment of the Act. These amendments abolished a special acceptance by the parties of the silicosis provisions of the Act.

This appeal is from the ruling of the circuit court. Several grounds are advanced for reversal of the judgment, practically all of which are contentions that Davidson's claim for compensation should also have been denied for reasons other than the one the Board relied upon in dismissing his application. We shall answer these later on in this opinion, but first we shall resolve the question that we believe is determinative of this appeal, to-wit: Did the Board correctly rule that it had no jurisdiction of appellee's claim?

The following stipulation agreement, so far as pertinent here, was made before a referee of the Board:

"It is stipulated and agreed that the plaintiff, Fraisher Davidson, was employed by the defendant, Osborne Mining Company, on September 18, 1958, and prior thereto; and

"*That on said date and prior thereto* the plaintiff and defendant had elected to, and were operating under the *Workmen's Compensation Act of Kentucky.*" (Emphasis ours.)

The Board found that the stipulation did not extend to and place appellee under the coverage of the 1956 amendment to the Act, noted above, which dispensed with the necessity of an election by the employer and employee to operate under the silicosis provisions. Instead the Board held KRS 342.005(2) before its amendment controlled, determined there had been no acceptance of the silicosis provisions of the Act, and then dismissed the application.

Appellant, maintaining the Board construed the words of the stipulation correctly, would have us limit the effect of the stipulatory agreement to the period when appellee's disability was first established by medical testimony, namely, sometime in January of 1955. It would then follow, so appellant argues, that the law applicable to silicosis during that time would govern.

However, we believe the stipulation is too broad and too all-inclusive in its im-

port to restrict its scope in such a narrow manner. It recites in essence that on September 18, 1958, as well as prior thereto, appellee and appellant *had elected to operate under the Workmen's Compensation Act.* Since the provisions of law pertaining to silicosis are deemed to be an integral part of the Act of this state, we are unable to comprehend how any one may logically assert the whole Act was not intended to be embraced in the stipulation when the broad language employed is considered. Moreover, there is no reason to confine the stipulation to a claim based upon an "injury" or an "accident," because no such claim has arisen.

We quote this excerpt from 50 Am.Jur., Stipulations, sec. 8, p. 609, which would incline us to the view that the lower court decided this issue correctly, assuming there should be a doubt concerning the question raised. It reads:

"As a general rule, stipulations should receive a fair and liberal construction, in harmony with the apparent intention of the parties and the spirit of justice, and in the furtherance of fair trials upon the merits, rather than a narrow and technical one calculated to defeat the purposes of their execution. The terms of a stipulation should not, however, be so construed as to extend beyond that which a fair construction justifies. *In all cases of doubt, that construction should be adopted which is favorable to the party in whose favor it is made.*" (Emphasis ours.)

We are therefore of the opinion that the stipulation amounted to an agreement that appellee and appellant had elected to operate under the silicosis law in force as of September 18, 1958.

Appellant raises an issue as to its liability for appellee's condition, pointing out that the medical testimony indicates the latter had fully contracted the disease of silicosis while working for Pond Creek Colliery. Thus he argues that, because appellee's disability accrued almost in toto under a for-

mer employer, it should not be held responsible.

There are two distinct views as to which of succeeding employers is to be held liable in a situation such as the one before us. These divergent conceptions of law have been denominated the "last exposure" rule and the "first occurrence of disability" rule. Under the first rule it has been held that "the employer in whose employment the employee was last injuriously exposed to the hazards of the disease is liable under statutes so providing, even though the disease has been present and has progressed over a long period of time, or although it may have had its origin in the employment of some previous employer, or developed and became apparent during a previous employment." See 99 C.J.S. Workmen's Compensation § 46, p. 238, from which this quotation is taken, and see also the cases cited in the footnotes.

The same title and section of 99 C.J.S., on page 239, has this to say on the "first occurrence of disability" rule: "Under some statutes in occupational disease cases it is held that the employer in whose employment the injured employee is at the time the disability first occurs is liable for the total consequences, so that if the final disability, whatever it may be, is inevitably due to exposure already complete, that employer becomes liable accordingly."

Both rules originate in statute, and an examination of the silicosis provisions of this state's compensation law, in force as of September 18, 1958, is to the effect that we were then (and still are) committed to the first rule. As stated in KRS 342.316(1) (b) "injurious exposure" was defined as that exposure to an occupational hazard which would, independently of any other cause whatsoever, produce or cause the disease for which claim was made. Subsection (4) of that section required an exposure by the employee "to the hazards of the disease in his employment within this state for at least two years before his disability or death."

KRS 342.316(12) then read and still provides: "When an employe has an occupational disease that is covered by this chapter (KRS Chapter 342), the employer in whose employment he was last injuriously exposed to the hazard of the disease, and the employer's insurance carrier, if any, at the time of the exposure, shall alone be liable therefor, without right to contribution from any prior employer or insurance carrier."

■ Appellee worked for appellant from June 2, 1955, until September 18, 1958, a little more than three years and three months, and the labor he performed was, for the most part, similar to that carried out while he was in the hire of Pond Creek Colliery. The evidence in the record clearly establishes, and the Board found, that appellee, in the course of his employment with appellant, was injuriously exposed to the hazards of silica dust the requisite length of time for harmful results to have ensued. It is common knowledge that silicosis may be contracted only by inhaling dust containing free silica particles.

We therefore conclude appellant is solely liable for compensation payments to appellee under the terms of the foregoing provisions of law.

Three other grounds are asserted by appellant why appellee's claim should be denied: (a) Appellee failed to give the required notice; (b) the claim is barred by the statute of limitations; and (c) he did not file his claim in time, irrespective of the question of proper notice.

■ Concerning the first point as to whether appellee's disability was brought to the attention of appellant, we believe the evidence reveals beyond all doubt that appellant was placed on notice of appellee's disease as of the commencement of his employment with it. Pond Creek Colliery definitely had knowledge of appellee's silicotic condition through its physician, Dr. Boggs, its general superintendent, its general mine foreman and appellee's section foreman. These individuals, for the most part, continued in the employ of appellant after it

took over the mine, and it is our view their information of appellee's disease, which was acquired to some extent after the transfer of this property to appellant, is imputable to the latter. See Enterprise Foundry & Machine Works v. Miners' Elkhorn Coal Co. et al., 241 Ky. 779, 45 S.W.2d 470, 473, and the cases therein cited. Furthermore, appellee communicated directly with appellant concerning his illness before he quit work, as shown by his unrefuted proof. From what has been shown notice was imparted to appellant in such a manner as to conform with KRS 342.316(2).

■ Is appellee's claim barred by the statute of limitations and did appellee file his application for compensation in time? Our answer is no to the first question and yes to the second. KRS 342.316(3), which was in effect at the time appellee filed his claim, and which remains unchanged, provided that appellee's right to compensation should be forever barred unless a claim was filed with the Board "within one year after the last injurious exposure to the occupational hazard."

However, in this connection, the last sentence of KRS 342.185 then allowed *"three years after the last injurious exposure to silica dust"* in which to enter an application for compensation. This sentence was retained in that section in the Kentucky Revised Statutes after August 1, 1956, the effective date of KRS 342.316(3) after its enactment; but this sentence was deleted from KRS 342.185 when it was amended in 1960, although the language of KRS 342.316(3) was left intact. This would appear to indicate the Legislature intended the one-year statute of limitations to apply after August 1, 1956, since it later struck it from KRS 342.185.

Appellee's last injurious exposure to the hazards of his occupation occurred on September 18, 1958, which was the last day on which he worked for appellant. He filed his application with the Board on November 25, 1958, or a little over two months after he was compelled for health reasons to terminate his employment with appellant. Obviously his claim for compensation was filed well within the statutory time limit prescribed by KRS 342.316(3). It follows that if appellee's claim was not barred by the statute of limitations it was filed in time.

We are of the opinion the circuit court correctly held that this proceeding should be remanded to the Board for an allowance of full compensation benefits to appellee.

Wherefore, the judgment is affirmed.