RENDERED: OCTOBER 23, 2025
TO BE PUBLISHED

# Supreme Court of Kentucky

2024-SC-0547-WC

ENCOVA MUTUAL INSURANCE GROUP                      APPELLANT
(FORMERLY BRICKSTREET MUTUAL
INSURANCE COMPANY)

                 ON APPEAL FROM COURT OF APPEALS
V.                      NO. 2024-CA-01021
                 WORKERS' COMPENSATION BOARD
                 NO. WC-15-01407

KENTUCKY EMPLOYERS' MUTUAL                      APPELLEES
INSURANCE; ROGER HALL; LETCHER
COUNTY BOARD OF EDUCATION;
HONORABLE CHRIS DAVIS,
ADMINISTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD

**OPINION OF THE COURT BY JUSTICE CONLEY**

**<u>AFFIRMING</u>**

This case is on its the third appeal to this Court and concerns the application of the Workers' Compensation Act ("Act" or "Chapter 342"). Encova Mutual Insurance Group ("Encova") appeals as a matter of right from the Court of Appeals' decision reversing the Workers' Compensation Board's ("Board" or "WCB") dismissal of Kentucky Mutual Insurance Company's ("KEMI") appeal seeking certification of the proper insurance carrier on the risk, after the Administrative Law Judge ("ALJ") determined a last date of injurious exposure that differed from the date originally alleged.

That change in date prompted a corresponding change in the liable insurance carrier. The ALJ, however, denied certification primarily on the ground that the motion was untimely brought, and he lacked the authority to resolve it. On appeal to the WCB, it affirmed on different grounds, ruling that neither KEMI nor Encova had standing to bring certification as neither had been formally joined as parties prior to that appeal. The Court of Appeals reversed the Board.

Encova's principal contention is that the Court of Appeals erred in holding that the Board must certify insurance coverage under KRS[1] 342.316(10). Encova argues the ALJ and the Board properly declined to shift liability to Encova after years of litigation, asserting that KEMI and the other parties had long been on notice of the claim but failed to timely raise the issue of coverage, and that fairness and procedural concerns should bar certification at this stage. In essence, Encova maintains that it should not bear liability despite the ALJ's finding that the last injurious exposure occurred in 2014, when it was the applicable insurer, because KEMI's delay in raising certification effectively waived any such transfer of responsibility.

For the following reasons, we affirm the decision of the Court of Appeals.

## I.     Factual Background and Procedural Posture

As this is the third time this case has come before this Court, we will not recount the full procedural history of this now decade-old workers' compensation dispute. *Letcher Cty. Bd. of Educ. v. Hall,* 576 S.W.3d 123 (Ky.

---

[1] Kentucky Revised Statutes.

2019) ("*Hall I*"); *Letcher Cty. Bd. of Educ. v. Hall*, 671 S.W.3d 374 (Ky. 2023) ("*Hall II*"). Instead, we summarize only the background necessary to contextualize this appeal and the facts relevant to the legal issues before us.

Roger Hall ("Hall") retired from Letcher County High School in 2003 after working as a full-time teacher since 1976. After retiring, he continued work as a substitute teacher until 2014. In September 2015, Hall filed a Form 102 workers' compensation application, alleging he developed mesothelioma due to asbestos exposure during his employment at the school. He listed the Letcher County School Board ("Letcher") as his employer, named KEMI as Letcher's 1990 insurer, and identified his last date of exposure to asbestos as "gradual," stemming from his full-time employment from 1976 to 2003. KEMI, having been identified as the carrier on the risk, retained counsel to defend Letcher throughout the proceedings.

In November 2015, Letcher moved for a more definite statement regarding Hall's listed date of last exposure and renewed the motion in March 2017. In 2017, the ALJ ordered Hall to supplement the application with a specific date, which Hall eventually listed as April 18, 2014, the last day he worked for Letcher as a substitute. In October 2017, the ALJ dismissed Hall's claim, concluding he was barred by the statute of limitations after finding that all asbestos was likely removed from the school in 1990.

Hall appealed to the WCB, which reversed, concluding that Hall had in fact been exposed to asbestos until 2003. The Court of Appeals and this Court affirmed the WCB's ruling due to compelling evidence demonstrating the

3

presence of asbestos to 2003, at the least. *See Hall I*, 576 S.W.3d at 127 ("It is abundantly clear from the evidence that Letcher County failed to eradicate all asbestos containing material from the school building. It is also clear that this material . . . was present in the school until 2003 and beyond. This evidence compels reversal of the ALJ's order."). The matter was then remanded for the first time.

In July 2019, the ALJ on remand issued an interlocutory order which amended the last date of exposure but set it aside just a few weeks later.  In April 2020, after considering additional evidence, the ALJ found Hall to be totally disabled, and determined his last date of asbestos exposure to be April 18, 2014; the date he stopped substitute teaching, rather than his 2003 retirement date. The ALJ ultimately awarded income and medical benefits against "[Letcher] and/or its insurance carrier." Consequentially, the ALJ did not identify the responsible insurance carrier with the new findings. Both Hall and Letcher sought review with the WCB, which affirmed the ALJ's findings on the date of last exposure and average weekly wage but reversed and remanded over the ALJ's assessment of certain unpaid bills. Hall did not appeal the WCB's decision.

Letcher, however, appealed to the Court of Appeals, arguing that the Board of Claims—not the Department of Workers' Claims ("DWC")—had exclusive jurisdiction over Hall's case, asserting that Letcher is a state agency. In August 2021, while that appeal was pending, KEMI formally attempted to enter the case. KEMI filed a notice of representation with the DWC as well as a

4

motion to intervene and motion for partial remand with the Court of Appeals, requesting certification of insurance. KEMI argued it was not the carrier on the risk on April 18, 2014, which became final when Hall declined to appeal the WCB decision. KEMI contended that Encova was Letcher's insurer in 2014 and asked the court to partially remand for carrier certification.

The Court of Appeals denied KEMI's motions, noting the absence of legal authority permitting a partial remand to the ALJ given that appellate review is limited to matters heard by the WCB. On the merits, the panel then rejected Letcher's jurisdictional argument, holding that the DWC—not the Board of Claims—had jurisdiction over the case because school boards are employers for the purposes of the Act. In affirming the WCB decision, the case was remanded for additional findings of certain medical bills and interest rates. Letcher appealed to this Court solely on the issue of whether the DWC had jurisdiction over Hall. Therein we held that because Hall was not suing Letcher for negligence or damages as required by KRS 49.020, he was entitled to the Workers' Compensation Act's exclusive remedies. *Hall II*, 671 S.W.3d at 381. There again, this Court declined KEMI's request for partial remand as it was never an issue in front of the Board. As such, the June 2023 *Hall II* opinion left the question of carrier certification unresolved upon remand.

In July 2023, once the matter turned to the ALJ, KEMI renewed its motion to intervene and again requested certification of coverage. KEMI reiterated that it was not Letcher's insurer on the now final 2014 date of last exposure and cited DWC records reflecting Encova was in fact the carrier on

5

the risk at that time. KEMI asked the ALJ to order the DWC commissioner to certify coverage accordingly. However, the ALJ addressed only some of the compensability issues, denying KEMI's attempt for carrier certification. Up to this point in the litigation, the only parties to the claim had been Hall and his employer, Letcher.

While the ALJ acknowledged KEMI moved to certify coverage as soon as it was notified, he nonetheless found its motion untimely. The ALJ reasoned that KEMI, as the named carrier, "solely" had the responsibility to seek certification due to KEMI's belief that it "should not be on the risk." He further "doubt[ed]" his authority to grant the motion on remand, interpreting the Court of Appeals' and this Court's refusal to grant KEMI's earlier partial remand motion as the equivalent to denying its request for intervention and certification on the merits. Offering few specifics, the ALJ further reasoned that granting the motion would prejudice Hall by causing additional delay, citing the eight-year duration of the litigation.

By October 2023, both KEMI and Encova appealed to the WCB. KEMI argued that the ALJ erred as a matter of law in refusing to certify the responsible insurer. Specifically, KEMI asserted it did not bear the burden of joining the responsible carrier, its motion was timely sought, the prior remand did not preclude the ALJ from resolving the certification issue, and that certifying the proper insurer would not prejudice Hall. In its cross-appeal, Encova contended that the ALJ did not err in refusing to certify coverage. It argued that KEMI was responsible for identifying and joining Encova, and there

6

was no determinative authority indicating whether KEMI's motion was timely or not. Encova echoed the ALJ's finding that he was directed to only decide attorney fees and compensability disputes on remand. Encova further asserted that the relief KEMI sought should also barred by the doctrine of laches.

In July 2024, the WCB dismissed KEMI's and Encova's appeal, holding neither insurance carrier had standing:

> [N]either KEMI nor Encova have ever been properly joined as a party to this claim. As such, neither has standing to pursue this appeal. The parties to this action are, and always have been, Hall and Letcher. There is no remaining dispute of whether Hall contracted mesothelioma due to his exposure to asbestos while employed by Letcher.

Notably, the WCB reached the same conclusion as the ALJ—denying certification—but for a different reason, lack of standing. The Board ruled that because carrier certification amounted to a "disagreement between two insurers," it should therefore be resolved in circuit court, not by the DWC. Although dismissing on standing grounds, the Board addressed other issues, including the timeliness of KEMI's efforts and which party bore the ultimate burden of certification:

> KEMI, who did not attempt to certify coverage until over two years after the ALJ's initial determination, seeks to deflect responsibility to another insurer that has never been joined as a party. Since KEMI is seeking to avoid payment, it should have promptly sought a certification of coverage rather than sitting idle.

The Board also sympathetically viewed Encova's laches argument, addressing KEMI's delay in seeking certification as unreasonable and prejudicial to Hall:

7

[KEMI] did not raise the coverage issue, nor did it file a request for certification of coverage, for more than two years. While this was not a primary argument during the second appeals process, the delay has now manifested by Hall still having not received benefits for more than nine years after his claim was filed. KEMI did not timely file a request for certification of coverage when ALJ Hajjar made her initial determination. By the time KEMI "realized" there may be a coverage issue, the claim was already before the Kentucky Court of Appeals.

Following the WCB's dismissal, KEMI appealed to the Court of Appeals, once again asserting that the proper insurer, not KEMI, should be held responsible for Hall's benefits. While acknowledging neither KEMI nor Encova were formal parties, KEMI argued that certification of the correct carrier falls squarely within the DWC's obligations under Chapter 342, and both insurers had voluntarily appeared by filing pleadings before the Board. Encova, by contrast, contended that the WCB did not err in ruling that the certification dispute should be resolved in circuit court and that the ALJ lacked authority to certify coverage at that stage in the proceeding. Letcher, the employer, also joined KEMI's appeal, requesting certification for the correct carrier.

In a thoughtful and well-reasoned opinion, the Court of Appeals panel reversed the Board and the ALJ's refusal to certify the responsible insurer. Applying the framework of the Workers' Compensation Act and this Court's precedent, it held:

> The Kentucky Supreme Court held that the Act grants an ALJ the authority to decide insurance coverage issues that affect the benefits received by the claimant. The ALJ has the authority to decide whether an employer's workers' compensation carrier covered the employer at the time of the employee's injury. Just as the Board can determine "whether an employment relationship

8

existed between the claimant and the alleged employer, so also may it determine an insurance company's rights in a compensation proceeding."

*Ky. Emp'rs' Mut. Ins. v. Hall*, No. 2024-CA-1021-WC, 2024 Ky. App. LEXIS 100, at \*21 (Ky. App. Nov. 8, 2024) (quoting *Motorists Mut. Ins. Co. v. Terry*, 536 S.W.2d 472, 473 (Ky. 1976)) (citations omitted).

The Court of Appeals' decision was founded on the broad scope of the Act, and the wide-ranging authority conferred upon both the ALJ and WCB to decide all issues arising under it. In applying the Act's beneficent purpose, the Court of Appeals panel reasoned: "The coverage of employers in Kentucky through an insurance policy is tantamount to accomplishing the underlying purpose of the Act; it provides the guarantee of payment of benefits to an injured worker. We submit that, as such, coverage questions are properly and necessarily justiciable by an ALJ." *Id.* at \*5. Now seeking review of that decision, Encova primarily reiterates its prior objections and defenses.

First, Encova contends that it was the responsibility of either Hall, Letcher, or KEMI to identify and formally join Encova as the carrier on the risk and therefore should not be bound by the untimely or lack of action by those parties. Second, Encova argues that KEMI failed to timely move to certify coverage, thereby leaving the issue unpreserved. Third, Encova maintains in the alternative that the ALJ, on remand, was instructed to resolve only specific issues which thereby precluded decisions on outside disputes, i.e., carrier certification. Finally, Encova asserts that any attempt to certify coverage at this stage should be barred under the doctrines of equitable estoppel and laches,

9

while adding that allowing such certification now would violate its due process rights by depriving it of notice and an opportunity to be heard before being subjected to financial liability to compensate Hall.

## II.      Standard of Review

The question presented in this appeal concerns which insurer—after a change in coverage date from the initial application—is responsible for paying workers' compensation benefits. Resolving this question implicates issues of subject matter jurisdiction, standing, joinder, laches, and statutory construction of the Act, among others. Here, the dispositive issue is not one of fact, but a matter of law: whether the ALJ misapplied Chapter 342. *Anderson v. Mountain Comprehensive Health Corp.*, 628 S.W.3d 10, 14 (Ky. 2021).

On review, this Court considers new or novel questions of statutory construction, reconsiders precedent, and reviews questions of constitutional magnitude. *W. Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992). While we do not revisit the ALJ's factual determinations, we are not bound by the ALJ's conclusion on questions of law or the application of law to the facts. *Ford Motor Co. v. Jobe*, 544 S.W.3d 628, 631 (Ky. 2018). Accordingly, a determination that a claim was untimely sought—when based on the ALJ's interpretation of the Act—is reviewed as a question of law. *Anderson*, 628 S.W.3d at 14. Thus, the appropriate standard of review for the issues before us is *de novo*.

Because resolution of these legal issues depends on statutory interpretation, this Court must,

look first to the plain language of a statute and, if the language is clear, our inquiry ends. We hold fast to the rule of construction that "[t]he plain meaning of the statutory language is presumed to be what the legislature intended, and if the meaning is plain, then the court cannot base its interpretation on any other method or source." In other words, "we assume that the [Legislature] meant exactly what it said, and said exactly what it meant."

*Univ. of Louisville v. Rothstein*, 532 S.W.3d 644, 648 (Ky. 2017) (citations omitted).

As we explained in *Hall II*, the "Workers' Compensation Act . . . is a statutory system specifically designed to compensate an injured worker for economic loss sustained as a result of work-related injury or disease." 671 S.W.3d at 379. Therefore, in discerning the legislature's intent from the plain statutory language, we must interpret the Act in accordance with its beneficent purpose:

> The primary purpose of the Workers' Compensation Act is to aid injured or deceased workers and statutes are to be interpreted in a manner that is consistent with their beneficent purpose. The overarching purpose of the workers' compensation chapter is to compensate workers who are injured in the course of their employment for necessary medical treatment and for a loss of wage-earning capacity, without regard to fault, thereby enabling them to meet their essential economic needs[.]

*Kindred Healthcare v. Harper*, 642 S.W.3d 672, 679 (Ky. 2022) (quotation and citations omitted).

### III. Analysis

Turning to the merits of this appeal, we begin by addressing the procedural threshold issue of the ALJ's and Board's scope of authority and jurisdiction on remand, followed by the question of standing. Specifically, we

11

first consider whether the ALJ and Board retained subject matter jurisdiction to certify coverage on remand and then whether the carriers had standing to seek or contest certification despite not being formal parties.

The ALJ concluded that this Court's denial of KEMI's motion for partial remand precluded an administrative determination of insurer certification, reasoning that the ALJ was only tasked with resolving interest rates and compensability issues. That conclusion, however, misreads the procedural history of *Hall II*, the scope of administrative jurisdiction under the Act, and the nature of relief sought.

First, in *Hall II*, we explicitly confined our review to a single issue: "[t]he sole issue presented in this appeal is whether the Department of Workers' Claims has jurisdiction[.]" 671 S.W.3d at 379. Because insurer certification had not been raised before the ALJ or the Board, no appellate court had jurisdiction to consider it at that stage. It is well-settled that a party's failure to raise an issue before an administrative body precludes asserting that issue upon judicial review. *Urella v. Ky. Bd. of Med. Licensure*, 939 S.W.2d 869, 873 (Ky. 1997). Thus, although this Court and the Court of Appeals declined to grant a partial remand during the prior appeal, that procedural limitation did not prevent the ALJ or Board from addressing insurer certification once the matter returned.

Encova argues that the Court of Appeals' statement, "[o]n remand, the only issue to be reviewed concerns the interest rate to be applied" effectively

12

resolved the legal question of certification, and that this Court's affirmance foreclosed further consideration of the issue. We disagree.

Our decision in *Hall II* did not address any question of carrier certification, as that issue was not in the record, thus, not before the Court. It is certainly true the law-of-the-case doctrine requires adherence to legal determinations made in prior appeals, but it does not extend to questions never actually decided. We reaffirmed in *Puckett v. Cabinet for Health & Family Servs.*: "[I]f an appellate court has passed on a legal question and remanded the case to the court below for further proceedings, the legal questions thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case." 621 S.W.3d 402, 409 (Ky. 2021) (quoting *Inman v. Inman,* 648 S.W.2d 847, 849 (Ky. 1982)).

The only legal question properly presented and actually decided in *Hall II* was whether the Department of Claims had jurisdiction over Hall's claim. Because the issue of certification had not yet been raised—and because appellate review is statutorily limited to issues presented to the Board—neither appellate court ruled on the legal question by declining KEMI's partial remand. Accordingly, our refusal to grant KEMI's motion for partial remand in *Hall II* was not a legal conclusion on the merits of carrier certification.

Next, because administrative bodies are creatures of statute—confined to powers expressly conferred—the heart of this dispute is whether the ALJ and WCB retained authority to determine the responsible carrier at this stage. Critically, Chapter 342 delegates broad powers to the ALJ and WCB for the

purpose of adjudicating claims. KRS 342.275 empowers the ALJ to be the factfinder and decision-maker, while KRS 342.325 authorizes the ALJ to decide "[a]ll questions arising under this chapter." KRS 342.285(2) then charges the Board to review the same evidence that was before the ALJ, except in cases of fraud or misconduct. More generally, KRS 342.285(2)(a)-(e) authorizes the WCB to reverse or remand based on several criteria, including:

(a) The administrative law judge acted without or in excess of his powers;

(b) The order, decision, or award was procured by fraud;

(c) The order, decision, or award is not in conformity to the provisions of this chapter;

(d) The order, decision, or award is clearly erroneous on the basis of the reliable, probative, and material evidence contained in the whole record; or

(e) The order, decision, or award is arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

This statutory grant of jurisdiction necessarily includes authority to determine which insurer bears responsibility for payment of benefits. The question of whether the ALJ and Board have the authority to certify coverage turns on whether that issue arises under Chapter 342. Numerous statutory provisions within the Act specifically address the obligations and responsibilities of insurance carriers; confirming that insurer certification is not collateral, but rather central to the promotion of an efficient workers' compensation system.

For example, KRS 342.340 requires employers to obtain coverage or self-insure and mandates proof of coverage filings with the DWC commissioner. KRS 342.375 confirms that any liability imposed under an award must be fully

covered by the insurer on the risk. As discussed further below, KRS 342.360 provides that jurisdiction over the employer is jurisdiction over the insurer and binds the insurer to awards rendered against the employer, even where notice is defective. KRS 342.365 construes any workers' compensation insurance policy as a direct promise between carrier and employee and imposes an obligation onto the carrier to promptly pay all benefits due under the Act. KRS 342.690(1) limits an employer's and insurer's liability exclusively to what is provided in the Act, unless otherwise stated in the policy. As to the Board's powers on review, KRS 342.228 further obligates the DWC to enforce these coverage-related provisions under Chapter 342.

Additionally, the regulatory scheme further reinforces this administrative authority. 803 KAR 25:010 Section 23 provides a mechanism for the DWC to certify the proper insurer at the outset of a claim. Similarly, 803 KAR 25:010 Section 2(3) allows for necessary parties to be joined as defendants when relief under the Act is sought against them.

Although Chapter 342 is ambiguous regarding a procedure for re-certifying a new carrier follow a change in the date of last exposure, the comprehensive statutory framework makes clear that questions of coverage must be resolved within the jurisdiction of the DWC. The ALJ and WCB are not only empowered to adjudicate the compensability of a claim, but also to ensure that payment is made by the responsible carrier under the Act. This authority to resolve and certify insurer liability in a pending claim is fundamental to the Act's beneficent purpose—securing a timely, predictable compensation for

15

injured workers. *Ky. Uninsured Emp'rs' Fund v. Hoskins*, 449 S.W.3d 753, 762-63 (Ky. 2014).

With this foundation established, we now turn to the WCB's grounds for dismissal: neither insurer had standing to seek or contest coverage at this stage because neither had been formally joined as parties to Hall's claim. That conclusion cannot be reconciled with the structure and purpose of the Act or the case law interpreting it. When read as a whole, Chapter 342 contemplates that insurers are not only bound by the adjudication of claims but are also necessary parties in disputes concerning whether coverage liability exists. Accordingly, our analysis proceeds in two parts: the precedential and statutory foundation confirming an insurers' standing and interest to participate in workers' compensation coverage disputes.

The WCB dismissed the appeal on the grounds that neither KEMI nor Encova had standing, reasoning that the dispute amounted to a disagreement between insurers which belonged in circuit court under KRS 342.305. In doing so, the WCB relied on *Custard Ins. Adjusters, Inc. v. Aldridge*, 57 S.W.3d 284 (Ky. 2001). As the Court of Appeals correctly explained, that reliance was misplaced. *Aldridge* involved a post-award dispute solely between two insurers regarding contract interpretation over reimbursement; one which had "no effect whatsoever" on the relationship between the employer, insurance carrier, and the injured worker. *Id.* at 287-88. Here the context is fundamentally different.

This is not a collateral contract dispute between two carriers. It is a question of coverage obligations under Chapter 342 which directly affect the

16

final disposition of Hall's claim. The present issue differs from a "simple attempt to enforce a final award" in circuit court and is not a dispute between two carriers over reimbursement of previously paid-out benefits unrelated to the Act. *Zurich Am. Ins. Co. v. Journey Operating, LLC*, 323 S.W.3d 696, 701 (Ky. 2010) (holding that coverage disputes implicating a carrier's obligation to pay benefits arise under the Act because it affects the integrity of the judgment, rejecting circuit court as the proper venue). Transferring this case to circuit court would thwart the Act's purpose of providing Hall an exclusive remedy; the claimant "should not be required to fight on two fronts." *Terry*, 536 S.W.2d at 474. Contrary to the Board's ruling, the ALJ's reasoning, and Encova's position: the statutory framework plainly allows for insurer participation directly in workers' compensation proceedings where coverage liability is in question.

As discussed, Chapter 342 imposes direct legal obligations on insurers when entering an agreement with the employer, mandating that the agreement is directly between the carrier and employee, and binds such insurers to awards entered by the ALJ. KRS 342.360. The Court of Appeals correctly recognized that insurers and the insured are inextricably linked: "jurisdiction of the insured . . . [is] jurisdiction of the insurer." *Id.*

Under 803 KAR 25:010 Section 23, the DWC must initially identify the carrier on the risk when the claim is filed. Although the regulations do not specifically address what happens after a change in the last date of exposure shifts the risk policy, the law for more almost seventy years has been "the

17

insurance carrier can raise for determination the question as to whether or not there was at the time a valid, outstanding policy issued by it covering the employer." *Lawrence Coal Co. v. Boggs*, 218 S.W.2d 670, 672 (Ky. 1949).

Moreover, *Aldridge*, when properly applied, supports insurers' participation in proceedings where their interests are at stake. There, we explicitly held that: "an insurance carrier may be made a party to the administrative proceeding and that the fact-finder has jurisdiction to decide questions affecting the insurer's obligation to pay workers' compensation benefits on behalf of its insured." *Aldridge*, 57 S.W.3d at 287 (citing *Lawrence Coal*, 218 S.W.2d at 671-72).

Once joined, it then "may question whether or not it had issued a valid, outstanding Policy . . . at the time of the worker's injury." *Id.* If the ALJ finds coverage to exist, the carrier must pay the award. These principles, rooted in the plain language of the Act and confirmed by precedent, recognize that insurers may be made parties and have standing to assert defenses or request a determination of liability under the Act.

Standing requires a judicially recognizable interest in the subject matter, one that is present and substantial in the outcome of the case. *City of Louisville v. Stock Yards Bank & Trust Co.*, 843 S.W.2d 327, 328-29 (Ky. 1992). Both KEMI and Encova have a direct financial interest in the certification decision— one that will determine which entity is obligated to pay Hall's benefits under Chapter 342. This is not a contractual dispute between insurers, but an ongoing, dispositive issue for the disposition of Hall's claim under Chapter 342.

18

*See* KRS 342.340; KRS 342.360; KRS 342.365. By ruling otherwise, the Board and ALJ disregarded the legal posture of this case, the statutory authority for insurers participation, and the clear precedent recognizing an insurer's interests in disputed coverage determinations. The Board therefore erred in concluding the insurers lacked standing to raise coverage certification.

We now address if the ALJ, procedurally, can determine which insurer is statutorily responsible under the Act based on the amended finding that Hall's last injurious exposure occurred in April 2014. This is not a question of party conduct or strategic delay. It is a matter of straightforward statutory application.

KRS 342.316(10) governs the determination of the responsible carrier, binding the carrier to the last date of exposure. It provides:

> the employer in whose employment [the worker] was last injuriously exposed to the hazard of the disease, and the employer's insurance carrier . . . at the time of the exposure, shall alone be liable therefor, without right to contribution from any prior employer or insurance carrier, except as otherwise provided in this chapter.

The ALJ found that Hall's exposure to asbestos continued on April 18, 2014, when he ceased substitute teaching for Letcher, after substantial evidence showed the asbestos was not fully removed by that time. Therefore, under the plain language of KRS 342.316(10), Encova is the liable carrier, consistent with Encova and Letcher's insurance agreement. The statute expressly forecloses liability for any prior carrier once a subsequent, injurious exposure is established.

19

This Court has repeatedly reaffirmed this interpretation. In *Brummitt v. Se. Ky. Rehab. Indus.*, we held that the existence of an earlier exposure that caused a gradual injury, does not relieve a latter insurer of responsibility when the injured worker continues working under a different carrier. 156 S.W.3d 276, 279 (Ky. 2005). In that case, the ALJ erred by attempting to impose full liability on the prior carrier based on the worker's initial employment date, even though the injurious exposure continued during a later coverage period. *Id.* If the injury was sustained during a carrier's coverage period, the ALJ is not precluded from assigning liability to ensure the proper carrier is responsible. *Id.*[2]

To avoid this, Encova also argues it is inequitable to impose liability upon it because it did not participate in, or have knowledge of, the earlier proceedings. In essence, Encova contends it cannot be bound by an award rendered in a proceeding in which it had no timely involvement. That argument, however, fails under the plain language and purpose of the Act.

Although the Act does not specify which party must notify an insurer when a claim's exposure date changes mid-litigation, its framework does not condition insurer liability on joinder or notice. Rather, Chapter 342 reflects the legislature's intent to ensure that coverage obligations are based on the insurance contract, the period and existence of employment, and the timing

---

[2] The "last exposure rule" codified in KRS 342.316(10) has been bedrock to the Kentucky workers' compensation system for decades, existing even under prior versions of the statute. *See e.g., Osborne Mining Co. v. Davidson*, 339 S.W.2d 626, 629 (Ky. 1960).

exposure—not procedural irregularities. While insurers are certainly empowered to play an active role in compensation proceedings, as they often do, the absence of such participation is not fatal under the Act's statutory scheme.

KRS 342.360 mandates that workers compensation insurance policies include a clause binding the insurer to any judgment against the insured employer, treating notice to the employer as equivalent to notice to the insurer. The statute provides:

> All policies . . . shall contain a clause . . . [that] notice to or knowledge of the occurrence of the injury on the part of the insured shall be considered notice or knowledge . . . on the part of the insurer; . . . the insurer shall in all things be bound by and subject to the awards, judgments or decrees rendered against the insured.

Similarly, KRS 342.365 provides that insurance obligations remain enforceable even where notice may be defective or delayed:

> No policy of insurance . . . arising under this chapter shall be issued unless it contains the agreement of the insurer that it will promptly pay . . . all benefits conferred by this chapter and all installments of the compensation that may be awarded . . . and that the obligation shall not be affected by any default in the giving of any notice required by such policy, or otherwise. This agreement shall be construed to be a direct promise by the insurer to the person entitled to compensation, enforceable in his name.

These provisions unequivocally bind the insurer to the acts and knowledge of its insured, foreclosing any defense based on defective or delayed notice. Once the ALJ found that Hall's last injurious exposure occurred during Letcher's period of coverage with Encova, the statutory liability followed. Even though Encova had not yet been joined, its policy came into effect upon that

21

finding and Encova became legally bound. *See* KRS 342.365; KRS 342.360; KRS 342.316(10).

Encova nevertheless invokes procedural due process, essentially arguing that notice was constitutionally deficient, and its late involvement denied it a meaningful opportunity to be heard. But that argument is incompatible with the Act's express treatment of insurers and employers as a single entity for notice purposes. *See* KRS 342.360 ("[N]otice to or knowledge of the occurrence of the injury on the part of the insured shall be considered notice or knowledge . . . on the part of the insurer[.]"); KRS 342.365 ("[T]he obligation [to promptly pay awards] shall not be affected by any default in the giving of any notice required by such policy, or otherwise."). Under this statutory regime, an insurer cannot claim surprise when its insured was timely notified of the injury and had participated throughout the proceedings.

In fact, Encova at this stage does not argue that its policy is invalid, ambiguous, or that Letcher did not pay the premiums. Encova was not blindsided by some unforeseeable development, nor will it be subjected to retroactive liability. Encova knew from the time it entered the policy that it would be obligated to pay awards for injuries arising during its coverage period. Thus, Encova's alleged liability arises directly from its own contractual and statutory obligations irrespective of personal service or actual notice. KRS 342.360; KRS 342.365.

Further, to the extent that Encova's arguments implies a constitutional challenge to the notice provisions contained in Chapter 342, that challenge is

22

not properly before this Court. KRS 418.075 requires that the Attorney General be notified in any appeal involving a challenge to the constitutionality of a statute. Strict compliance with these requirements is mandatory. *A.H. v. Louisville Metro Gov't,* 612 S.W.3d 902, 913 (Ky. 2020). Because the record does not establish compliance with KRS 418.075, any ruling on constitutional grounds would be void. *Id.* (citing *Maney v. Mary Chiles Hosp.,* 785 S.W.2d 480, 482 (Ky. 1990)).

In short, the Act binds Encova by operation of law once the last date of exposure was finally adjudicated. The only remaining question is whether the mechanism for raising that liability—namely joinder, on remand—was timely and properly pursued. The ALJ denied the joinder motion as untimely, and the WCB further reasoned that KEMI was seeking to "deflect responsibility to another insurer" by avoiding payment. Encova argues that legal grounds for recertification existed, at least, as soon as the ALJ's 2019 interlocutory order and that the two-year delay renders the motion untimely.

Notably, Chapter 342 does not specify who must move for carrier certification after a later change in exposure date. The ALJ determined that KEMI, as the current responsible insurer, bore the burden of certification. Additionally, Encova, the ALJ, and seemingly the WCB viewed KEMI's motion as untimely. However, 803 KAR 25:010 Section 2(3) sets forth the applicable joinder standard:

> (a) All persons shall be joined as defendants against whom the ultimate right to relief pursuant to KRS Chapter 342 may exist, whether jointly, severally, or in the alternative. An administrative

23

law judge shall order, upon a proper showing, that a party be joined or dismissed.

(b) Joinder shall be sought by motion as soon as practicable after legal grounds for joinder are known. Notice of joinder and a copy of the claim file shall be served in the manner ordered by the administrative law judge.

As to timing, there is no fixed statutory or regulatory deadline for when a party must move to certify a new carrier after a change in exposure date. Rather, the motion must be brought "as soon as practicable" after legal grounds are known. *Id.* The facts and circumstances of a case control this determination. *Trico Cty. Dev. & Pipeline v. Smith*, 289 S.W.3d 538, 542 (Ky. 2008). Here that analysis turns on when the legal basis for certification first arose. Importantly, the issue must be evaluated in light of the Act's beneficent purpose and the duty to do justice to both the employer and employee. *Harper*, 642 S.W.3d at 680.

The ALJ acknowledged that KEMI's original motion to certify coverage when the appeal was pending came "as soon as [it was] notified" of the issue, yet still found the subsequent motion on remand untimely. This was error. A foundational principle of appellate procedure is that a trial court loses jurisdiction once a notice of appeal is filed. *Wright v. Ecolab, Inc.*, 461 S.W.3d 753, 758 (Ky. 2015). This principle applies with equal force to administrative proceedings. *See* KRS 342.290; KRS 342.300; *Jerry's Drive In, Inc. v. Young*, 335 S.W.2d 323 (Ky. 1960). As such, neither the WCB nor ALJ could act on any motion during the pendency of that appeal. Also, an appellate court could not have addressed KEMI's partial remand motion while pending because the

24

issue was not preserved under KRS 342.290, as discussed above. *See also Urella*, 939 S.W.2d at 873. Accordingly, legal grounds for KEMI to pursue carrier certification did not yet exist prior to the resolution of the previous appeal.

Contrary to the WCB's assertion that KEMI sat "idle" while "seeking to deflect responsibility," KEMI moved to certify coverage just thirty days after *Hall II* became final. That was the first point at which both jurisdiction and procedural opportunity were properly aligned. With the case returned to the ALJ on remand, joinder became procedurally viable. KEMI's motion was therefore made at the earliest practicable moment, after jurisdiction returned. The ALJ's conclusion that thirty days was untimely lacked any legal foundation.

As to who must move for carrier certification, neither 803 KAR 25:010 Section 2(3) nor any other provision assigns that obligation to a specific party. Rather, any interested party—employer, insurer, or injured worker—may raise coverage issues. Nothing in the statute or case law supports the notion that only KEMI bore the burden to move for certification; Encova does not even advance that position. Despite the ALJ's and WCB's view that these circumstances warranted KEMI to bear the burden to seek joinder, there is no statutory or regulatory text to impose such a requirement. Nor do any statutes or regulations provide that Encova had to be joined to the proceeding to be bound by the award. Accordingly, we will not circumvent the Act's beneficent purpose by supplying words the legislature did not include. *Fox v. Grayson,*

25

317 S.W.3d 1, 8 (Ky. 2010) ("It is well settled law that a court may not add language to the written law to achieve a desired result.").

Encova argues, in the alternative to joinder being improper, that certification of coverage must be barred on equitable grounds; specifically, under the doctrines of laches or equitable estoppel. Encova contends that Hall, Letcher, or KEMI should have notified it as early as 2017, when Hall amended his last exposure date to April 2014. Encova claims they engaged in "purposeful silence." Due to this lack of notice, Encova asserts it was denied any opportunity to participate in discovery, hire counsel, or otherwise defend its interests yet is now bound by an adverse award and legal fees. On that basis, Encova urges this Court to bar certification altogether. We disagree. Neither laches nor estoppel provide a viable defense here.

Equitable estoppel operates to prevent a party from benefiting from its own misconduct. *Akers v. Pike Cty. Bd. of Educ.*, 171 S.W.3d 740, 743 (Ky. 2005). Laches, by contrast, applies when a party unreasonably delays asserting a right to the prejudice of another. *Plaza Condo. Ass'n, Inc. v. Wellington Corp.*, 920 S.W.2d 51, 54 (Ky. 1996). We address these arguments in turn, beginning with laches.

First, long-standing precedent requires two core considerations in applying laches:

> [T]here are two elements to be considered. As to what is unreasonable delay is a question always dependent on the facts in the particular case. Where the resulting harm or disadvantage is great, a relative brief period of delay may constitute a defense while

26

a similar period under other circumstances may not. What is the equity of the case is the controlling question.

*City of Paducah v. Gillispie*, 115 S.W.2d 574, 575 (Ky. 1938).

When measuring the delay against the complex procedural history and the nature of the alleged harm, there is no basis to apply laches. As previously discussed, the record confirms that KEMI moved to certify coverage just thirty days after *Hall II* became final and jurisdiction returned to the ALJ. While the appeal was pending, any effort to raise coverage issues there would have been jurisdictionally improper. *See Wright*, 461 S.W.3d at 758. While it would have been prudent for Letcher to notify Encova immediately once the date was conclusively determined, the fact remains that any alleged harm to Encova from certifying coverage is non-existent.

Specifically, Encova's claimed prejudice does not stem from some purposeful delay, but from the statutory consequence of the ALJ's finding that Hall's last injurious asbestos exposure occurred during Encova's coverage period. Encova's potential liability is not tied to participation, but rather to being the carrier on the risk for Letcher's policy on the date of the ALJ's finding. *See* KRS 342.316(10). By coupling Encova's clear statutory and contractual liability with the complex procedural history, we conclude that this scenario is not the kind of prejudicial delay laches is meant to ameliorate.

Encova's estoppel argument does not fare any better. The elements of estoppel are:

> 1.) acts, language, or silence amounting to a representation or concealment of material facts; 2.) the facts are known to the estopped party but unknown to the other party; 3.) the estopped

27

party acts with the intention or expectation that the other party will rely on its conduct; and 4.) the other party does so to its detriment.

*Hitachi Auto. Prods. USA, Inc. v. Craig*, 279 S.W.3d 123, 126 (Ky. 2008).

Like laches, estoppel depends on context. The particularities of each case determine whether estoppel is warranted, as this Court further explained: "The facts and circumstances of a case determine the propriety of resorting to an equitable remedy. Conduct that works a fraud or constructive fraud on the tribunal and has a detrimental effect on the accuracy and integrity of a judgment warrants such a remedy." *Zurich Am. Ins. Co.*, 323 S.W.3d at 701-02 (citation omitted). Here, Encova identifies no affirmative concealment or misrepresentations, no detrimental reliance, and no conduct arising to fraud, constructive or otherwise. Its position is founded on silence. Given the circumstances of this complex litigation with no statutory violation or duty to notify, silence alone cannot constitute misconduct sufficient to warrant estoppel. As already discussed, the Act itself is silent as to both who must notify the responsible carrier and when, after the judicially established exposure date shifts the carrier on the risk mid-litigation.

Critically, an insurer's liability under the Act is not conditioned on notice, timely joinder, or participation to be bound by an injured workers' award. *See Fruchtenicht v. United States Fid. & Guar. Co.*, 451 S.W.2d 835, 838 (Ky. 1969). Rather, it arises from the existence of an employment relationship, a valid insurance policy, and the timing of exposure, all of which are present here. Once the ALJ concluded Hall's exposure continued into April 2014—

28

during Encova's coverage period—Chapter 342 imposed liability on Encova. *See* KRS 342.316(10); KRS 342.360; KRS 342.365.

Ultimately, the only parties with the statutory obligation to pay benefits for Hall's asbestos exposure related injuries are Letcher and the carrier on the risk. Yet, without certification, KEMI, no longer the statutory carrier, will be forced to bear the financial burden. In sum, the Board's refusal to certify coverage contradicts the law, and "[l]aw trumps equity." *Bell v. Commonwealth*, 423 S.W.3d 742, 748 (Ky. 2014).

## IV. Conclusion

Accordingly, and for the foregoing reasons, the Court of Appeals is affirmed. We remand this case to the Workers' Compensation Board for proceedings consistent with this opinion.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Ronald J. Pohl
Pohl Aubrey & Gray, P.S.C.

R. Tyler Hurst
Burns White LLC

COUNSEL FOR APPELLEE, KEMI:

James G. Fogle
Fulton, Devlin & Powers, LLC


COUNSEL FOR APPELLEE, LETCHER COUNTY BOARD OF EDUCATION:

W. Barry Lewis
Lewis & Lewis Law Offices


COUNSEL FOR APPELLEE, ROGER HALL:

Daniel Fayne Dotson
Daniel F. Dotson, P.S.C.


WORKERS' COMPENSATION BOARD:
Michael Wayne Alvey
Chairman


ADMINISTRATIVE LAW JUDGE:
Hon. Chris Davis